**Marcus Jamez LEWIS, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–14–00779–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 7, 2016

Discretionary Review Refused May 4, 2016

Marcus Jamez Lewis, Jani J. Maselli Wood, for Appellant.

Clinton Morgan, Devon Anderson, for State of Texas.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

Marc W. Brown, Justice

A jury convicted appellant Marcus Jamez Lewis of possession of cocaine.[1] The trial court sentenced appellant to confine-

---

1. Tex. Health and S. Code Ann. § 481.115(a), (c), § 481.102(3)(D) (West 2010).

ment for 45 years in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises five issues on appeal. We affirm.

### Factual and Procedural Background

On August 15, 2013, Officers K. Solis and J. Diaz observed appellant driving a car with improperly displayed license plates. The officers turned on the lights and sirens on their squad car to indicate to appellant that they intended to pull him over. Appellant began slowing down, but did not stop. After honking at appellant and using their P.A. system to instruct him to pull over, appellant finally pulled into a parking lot and came to a stop.

Officer Solis approached the passenger side of the car, where he observed a small object that appeared to be a rock of crack cocaine on the passenger's thigh. Officer Solis asked the passenger to step out of the car, at which time he admitted that he was in possession of crack cocaine. Officer Diaz then asked appellant to step out of the vehicle and asked appellant for identification. Appellant refused to present Officer Diaz with identification or step out of the vehicle and began yelling and questioning the officers. Officer Solis drew his Taser gun and ordered appellant to step out of the vehicle. Appellant complied and allowed himself to be handcuffed. Once appellant and his passenger had both exited the car, the officers performed a search of the interior of the vehicle. Officer Diaz searched the panel located on the inside of the driver's side door and found a box of cigarettes. Officer Diaz opened the cigarette box and found several small bags containing white powder. A field test indicated that the powder was cocaine. Officer Solis also found a firearm hidden inside of a compact disc case in the back seat.

Appellant was indicted for possession of a controlled substance. The indictment also alleged two prior felony convictions. Prior to trial, appellant filed several motions and affidavits. In these filings, appellant: referred to himself as "Marcus Jamez Lewis(c), a living, breathing, flesh-and-blood man under the law of God"; asserted a contract between the prosecutor as "offeror" and himself as the "offeree"; and described himself as a sovereign citizen "housekeeping" in the Republic of Texas. Appellant also filed a pre-trial writ of habeas corpus in which he cited to several provisions of the Uniform Commercial Code as well as the "Maritime Claims Rule."

Appellant's court-appointed counsel, Ted Doebbler, filed a motion for a psychiatric evaluation to determine whether appellant was competent to stand trial. The trial court granted the motion and appellant was evaluated by a licensed psychologist, who concluded that appellant was competent. The evaluating psychologist reported that appellant had a rational understanding of the charges against him, exhibited appropriate courtroom behavior, and possessed the capacity to adequately participate in legal proceedings with the guidance of legal counsel. The psychologist reported also that appellant exhibited adjustment disorder with anxiety, polysubstance dependence in early partial remission in a controlled environment, and antisocial personality disorder. The psychologist suggested that it would be beneficial for appellant to take the psychoactive medication that he had previously been prescribed but refused to take.

Before the start of trial, appellant informed the trial court that he intended to represent himself. The trial court admonished appellant that it was not in his best interest to proceed pro se and began a

*Faretta* [2] hearing. At the outset, appellant asked the trial court to address him as "Paramount Security Interest Holder and Properties Collateral Belonging to the Defendant." The trial court denied the initial request, and continued to do so each time that appellant asked. In his responses to the court's questioning, appellant appeared to be feigning misunderstanding. The following exchange is illustrative:

THE COURT: So how far did you get in school, Mr. Lewis?

DEFENDANT: In what school?

THE COURT: What school do you think I'm talking about, sir? You don't have any idea?

DEFENDANT: No, sir.

. . .

THE COURT: So what part of school is not clear to you.

DEFENDANT: I've been to several schools.

THE COURT: How far did you go in school? Tenth grade, college, pick a number.

DEFENDANT: College.

The trial court asked appellant if he understood the ramifications of representing himself, to which appellant responded that he was representing himself as the "Paramount Security Interest Holder of All Property Collateral Belonging to the Defendant" and therefore was the agent for Marcus Jamez Lewis. The trial court then said that appellant could not represent himself because he did not understand "the issues." However, the hearing continued. The trial court asked appellant several more times if he understood that he would be held to the same standard as an attorney and appellant indicated that he did. The trial court asked appellant if he understood the range of punishment he was facing. Appellant indicated that he did. The trial court then warned appellant that he would not be able to present any of his pre-trial Uniform Commercial Code arguments as part of his defense. Appellant again feigned ignorance as the trial court admonished him:

THE COURT: I'm telling you up front, Mr. Lewis, none of this UCC stuff is getting in front of this jury. It has nothing to do with this case. Do you understand that, sir?

DEFENDANT: Do I understand what?

THE COURT: What part of that last sentence was not clear to you, sir?

DEFENDANT: You said—

THE COURT: None of that UCC stuff.

DEFENDANT: You keep referring to that UCC stuff I don't—

THE COURT: Well, you filed stacks of motions quoting UCC. I'm reading your file right here. Are those your motions, sir?

DEFENDANT: Yes.

THE COURT: That stuff you've been writing down for the last few months, that's what I'm talking about.

DEFENDANT: Can you be specific because I wrote so much.

THE COURT: I know you have. None of this UCC stuff is getting in front of this jury.

DEFENDANT: What about my three-step administration process that I tried to handle with the district attorney who I don't even know where she is.

THE COURT: Standing right beside you, 5 feet away.

DEFENDANT: Where? She didn't identify herself.

The trial court asked again whether appellant waived his right to effective legal counsel. Appellant said that he did. The

2. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

trial court asked appellant for a final time whether he knew what he was charged with, to which appellant responded, "No, what are the charges?" The trial court again read appellant the charges and asked if he understood them. Appellant responded that he did not. The trial court then denied appellant's request to represent himself, saying that he "showed a lack of understanding of what he [was] charged with and [the] procedures of the court." In a signed order denying appellant's motion to waive counsel, the trial court wrote that appellant was "confrontational, obstructive, and [chose] to assert issues not relevant to this case" and that he possessed "no understanding of [the] rules of evidence [or] relevancy." The trial court also made reference to appellant's insistence on being referred to as "Paramount Securities Interest Holder" and his assertion that he was a sovereign citizen.

Following the court's order, Ted Doebbler remained as trial counsel. The trial court informed appellant that he could remain in the courtroom as long as he was not obstructive or else he would have to sit in a holding cell outside the courtroom. Appellant again responded that the court was referring to him by an incorrect name and insisted that he be referred to as "Marcus" or "Paramount Security Interest Holder." Appellant reiterated that he did not consent to Doebbler as his attorney. Appellant also continued to raise bizarre questions:

THE COURT: So again, Mr. Lewis, you are welcome to join us for your trial. You can sit here quietly and assist your counsel, or you can sit back and listen to it. Which one do you choose?

DEFENDANT: I have issue with subject matter jurisdiction.

THE COURT: We're back to UCC stuff.

DEFENDANT: And you said your name is Judge, right?

THE COURT: That's right.

DEFENDANT: Is that in your physical capacity or primatial capacity?

The trial court concluded that appellant should be put in a holding cell at the start of trial. After asking appellant if he would like to return to the courtroom, appellant refused to come out or to wear the street clothes that Doebbler provided for him. Shortly after, appellant changed his mind and appeared in the courtroom. The trial court commenced voir dire. Appellant interjected several times during voir dire to tell the trial court that he did not consent to Doebbler as his attorney. The trial court warned appellant to stop disrupting the proceeding or else he would be removed from the courtroom. Appellant told the trial court he did not want to be "part of this process," at which time the court ordered him to be removed for the rest of voir dire.

The next day, appellant refused to leave his cell for four-and-a-half hours before finally being forcibly removed and brought to court. When the trial court asked appellant to enter his plea, appellant responded that there was an issue of subject matter jurisdiction and again stated that he did not consent to being represented by Doebbler. The trial court again warned appellant not to obstruct the proceedings or talk out of turn:

THE COURT: ... you can only stay here if you do not obstruct the proceedings by speaking out of turn, speaking over the Court, interjecting yourself into trial; or if you will not agree to that, I will place you back into the holding tank, a secured area ... So Mr. Lewis, it's up to you. Do you want to stay in the courtroom and observe the process, or listen to it in the back holding cell, as you see fit, sir?

DEFENDANT: For the record, I am the Paramount Security Interest Holder for all property collateral belonging to the defendant, Marcus Jamez Lewis. Once again, I do not consent to have Ted Doebbler represent the defendant. I wish to proceed in this manner in my proper persona. I do not consent for trial.

THE COURT: So Mr. Lewis, I'm still stuck with that issue. You're welcomed and encouraged to stay here and observe and assist Mr. Doebbler during the course of the trial, if you do so without obstructing the orderly process of the Court. If I can't get your word on doing that, you'll have to listen to the trial in a secure holding area. Which do you prefer to do, sir?

DEFENDANT: Judge, are you violating my 5th and 6th Amendment right?

THE COURT: I presume you're not going to answer that question. I'm placing Mr. Lewis in a secure area ...

After another exchange in which appellant requested to inspect the original indictment, appellant asked if there was anyone in the courtroom who had a claim against him. The trial court ordered appellant to be removed.

The trial proceeded with the parties' statements and witness testimony. During the trial, appellant began screaming from the holding cell that he did not consent. The trial court warned appellant that he should stop or else he would be removed to a room further away from the courtroom. Appellant continued yelling, at which time the trial court ordered him to be removed to a holding cell in another part of the courthouse. The trial court took periodic breaks to allow Doebbler to visit appellant and confer with him; appellant refused to speak with Doebbler or return to the courtroom for the remainder of trial.

The jury convicted appellant of possession of cocaine in an amount between one and four grams. Appellant returned to the courtroom for arraignment on the enhancement paragraphs and sentencing by the trial court. Appellant refused to speak, and Doebbler entered pleas of "not true" to the two prior felony convictions that were listed as enhancements on the indictment. The State called two witnesses during the punishment phase; Doebbler called none. The trial court found both allegations of prior conviction true and assessed punishment at 45 years in the Institutional Division of the Texas Department of Criminal Justice. Appellant presents five issues on appeal.

## Analysis

### I.

In his first issue, appellant argues that the trial court denied his election to represent himself on an improper basis— his lack of understanding of the rules of evidence and relevancy and his confrontational and obstructive behavior.

We review the denial of a defendant's request for self-representation for abuse of discretion. *Alford v. State*, 367 S.W.3d 855, 861 (Tex.App.—Houston [14th Dist.] 2012, pet. ref'd). Improper denial of the right to self-representation is a structural error that requires reversal and is not subject to harmless error review. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 149, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)).

In 1975, the Supreme Court recognized a criminal defendant's constitutional right to conduct his own defense. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Not only does the Sixth Amendment guarantee a criminal

defendant the right to effective assistance of counsel, it also ensures the defendant's right "personally to decide whether in his particular case counsel is to his advantage." *Id.* at 834, 95 S.Ct. 2525. "Although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id.*

While the courts must undoubtedly respect a defendant's knowing and intelligent choice to represent himself, the defendant's self-representation must likewise respect the "dignity of the courtroom." *Id.* at 834 n. 46, 95 S.Ct. 2525. "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (declining to extend *Faretta* to appellate proceedings). Therefore, trial courts are afforded the discretion to deny self-representation by a defendant who "deliberately engages in serious and obstructionist misconduct" or "abuse[s] the dignity of the courtroom." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. Because the trial court's decision to deny self-representation based on deliberately obstructive behavior turns on an evaluation of credibility and demeanor, we afford almost total deference to that decision. *See Chadwick v. State,* 309 S.W.3d 558, 561 (Tex.Crim.App.2010).

Here, the trial court denied appellant's request to represent himself after observing appellant's confrontational and obstructive behavior. Appellant urges a reading of the record that shows appellant as cooperative and responsive to all of the trial court's questions. Although appellant spoke when spoken to, he was hardly cooperative. In nearly every exchange, appellant insisted that the Court was addressing the wrong person. Instead of being addressed as "Mr. Lewis," appellant wanted to be addressed by the cumbersome and nonsensical appellation "Paramount Security Interest Holder in All Collateral Properties Belonging to Defendant Marcus Jamez Lewis." The trial court read appellant the charges against him several times, but appellant insisted that he did not know what he was being charged with, although he did tell the trial court that he understood the range of punishment he was facing. Appellant also continued raising subject matter jurisdiction and similarly inapplicable and unrelated contractual arguments that he made in his pre-trial filings. Midway through the *Faretta* hearing, appellant asked the trial court to identify himself saying, "I don't even know who you are," a remark that seems less like a request for clarification than a show of defiance. Later, appellant asked the trial court if "Judge" was his name in his physical capacity or in his "primatial" capacity. When the court responded that "Judge" was his name in his physical capacity, appellant asked "who and what" he was the judge of. As the proceeding moved forward with Doebbler as appellant's attorney, appellant tried, time after time, to obstruct the proceeding by informing the court— often in loud and disruptive outbursts—that he did not consent to moving forward with trial with his appointed attorney.

The record in this case indicates that appellant is one of a loosely-formed group of citizens who believe that they are sovereign individuals, beyond the reach of any criminal court. These so-called "sovereign citizens" share a common vernacular and courtroom strategy. Courts across the country have encountered their particular brand of obstinacy—not consenting to trial, arguing over the proper format and meaning of their names, raising nonsensi-

cal challenges to subject matter jurisdiction, making irrelevant references to the Uniform Commercial Code, and referring to themselves as trustees or security interest holders.[3] These calculated obstructions and delay tactics pose a unique challenge for trial courts considering *Faretta* motions. When a defendant asserts irrelevant or nonsensical arguments, it becomes difficult to discern whether he lacks a complete understanding of the proceedings or whether he is simply attempting to subvert them. *See United States v. Mosley*, 607 F.3d 555, 557–59 (8th Cir.2010) (upholding a trial judge's decision to deny self-representation based on an observation that the defendant either did not understand the proceedings or was "unwilling to participate in them"). The trial court's own assessment, therefore, is critical in determining whether the defendant actually lacks the mental capacity to conduct his own defense or whether he is utilizing his intact mental capacity to consciously obstruct the proceedings against him. We hold, that in either case, the trial court may deny the defendant's request to represent himself and insist on representation by appointed counsel.[4]

However, even though we rely heavily on the trial court's assessment of an obstreperous defendant when reviewing the court's decision, the court's discretion to deny the right of self-representation is necessarily limited. *Faretta* empowers the courts to preserve the integrity of the trial by denying self-representation to those who deliberately engage in obstructionist behavior. Allowing a defendant to represent himself will almost certainly result in some disruption or delay in the trial proceedings, but "so long as it is not a *calculated* obstruction, this delay cannot deprive the accused of the right [of self-representation] once properly asserted." *Birdwell v. State*, 10 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (emphasis added). We address only the instances in which the trial court has observed calculated attempts to disrupt, subvert, or obstruct the trial proceedings. A trial court may not deny the right to self-representation based simply on "predictions of likely recalcitrant behavior" or delay or disruption incidental to self-representation without a legal education.[5]

---

3. *See e.g. United States v. Benabe*, 654 F.3d 753, 761–64 (7th Cir.2011); *United States v. Mosley*, 607 F.3d 555, 557–58 (8th Cir.2010); *United States v. Cochran*, Nos. 2:06 CR 114; 2:09 CV 275, 2009 WL 4638836, at *6–8 (N.D.Ind. Nov. 30, 2009); *United States v. Mitchell*, 405 F.Supp.2d 602, 603–06 (D.Md. 2005); *People v. Miller*, F067409, 2015 WL 4029853, at *7 (Cal.Ct.App. June 26, 2015); *People v. Frazier*, A134256, 2013 WL 3947765, at *2 (Cal.Ct.App. July 30, 2013); *State v. Thigpen*, 2014 WL 265503, at *2–4 (Ohio App. 8 Dist. Jan. 23, 2014).

4. The discretion of the trial court to deny self-representation based on severe mental illness is well-established. In *Indiana v. Edwards*, the United States Supreme Court concluded that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial … but who still suffer from severe mental illness to

the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. 164, 178, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). The Texas Court of Criminal Appeals reaffirmed this "mental-illness-related limitation on the scope of the self-representation right" in *Chadwick* by upholding a trial court's decision to deny self-representation by a mentally ill defendant. *Chadwick v. State*, 309 S.W.3d 558, 560–61 (Tex.Crim.App.2010) (quoting *Edwards*, 554 U.S. at 171, 128 S.Ct. 2379). We do not comment further on the scenarios in *Chadwick* and *Edwards* and confine our holding only to the situation at hand in which the defendant does not show signs of severe mental illness, but nonetheless has forfeited the right to conduct his own defense.

5. Likewise, as appellant correctly asserts in his brief, a trial court may not deny a defendant the right to self-representation based on

*Scarbrough v. State,* 777 S.W.2d 83, 92, 94 n. 3 (Tex.Crim.App.1989); *Colon v. State,* 717 S.W.2d 474, 475 (Tex.App.—San Antonio 1986, no pet.) ("To hold that citizens are unduly disruptive merely because they are inexperienced in the practice of law is tantamount to holding that only attorneys enjoy a constitutional right to self-representation.").

On this record, the trial court did not abuse its discretion in determining that appellant's behavior demonstrated an attempt at calculated obstruction and delay, not an earnest attempt to act in his own defense. The delay caused by appellant's questions, interjections about his proper name, and general refusal to give answers responsive to the trial court's questioning were not regular incidents of self-representation. Rather, they were deliberate and calculated disruptions. Here, the trial court did not rely on mere predictions of recalcitrant behavior; it witnessed this behavior firsthand. The court's written order denying appellant's *Faretta* motion characterized appellant as "confrontational and obstructive," not as incompetent or possessing an "uncertain mental capacity," as appellant asserts in his brief. We defer to the trial court's assessment of the appellant as willfully obstructive and hold that its subsequent decision to deny appellant his request for self-representation was in line with *Faretta* and not an abuse of discretion. We therefore overrule appellant's first issue.

## II.

 In his second issue, appellant equates the trial court's denial of his re-

his "lack of technical legal knowledge." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (defendant's mastery of the intricacies of the hearsay rule and other state penal provisions not relevant to assessment of knowing exercise of right to self-representation). Even though the trial court noted in its written denial that appellant did not understand the rules of evi-

quest for self-representation to a finding that he was unfit to represent himself due to an "uncertain mental capacity." Because of this "uncertain mental capacity," appellant argues, the trial court should have conducted an informal inquiry into his competency to stand trial.

 We review a trial court's failure to conduct a competency inquiry for abuse of discretion. *Hobbs v. State,* 359 S.W.3d 919, 924 (Tex.App.—Houston [14th Dist.] 2012, no pet.). The trial court's firsthand assessment of a defendant's ability to assist counsel and his understanding of the proceedings is entitled to "great deference" by a reviewing court. *McDaniel v. State,* 98 S.W.3d 704, 713 (Tex.Crim. App.2003).

The trial court, on its own motion, "shall suggest that the defendant may be incompetent to stand trial" if evidence suggesting that the defendant may be incompetent comes to the court's attention. Tex. Code Crim. Proc. Ann. art. 46B.004(b) (West 2015). If the trial court makes this suggestion, then it shall "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). A suggestion that the defendant may be incompetent to stand trial may be based on the trial court's observations regarding the defendant's "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "rational as well as factual understanding of

dence, the record shows ample support for the proposition that the trial court ultimately denied self-representation because of appellant's obstreperous behavior. We nevertheless reiterate that a trial judge may not deny a defendant who knowingly and intelligently asserts his right to self-representation simply because he lacks legal mastery.

the proceedings against [him]." *Id.* arts. 46B.003(a)(1), (a)(2), 46B.004(c–1).

Appellant argues that, despite the fact that he was previously found competent to stand trial, the observations that led the trial court to deny his request to represent himself—his obstructive and confrontational behavior, his assertion that he was a sovereign citizen, and his lack of understanding of the relevant legal rules—suggested to the court that he may have become incompetent.[6] If appellant was unqualified to represent himself, he argues, then he also must have been unqualified—that is, incompetent—to stand trial.

■ Appellant's argument conflates two distinct competencies. The Supreme Court's holding in *Indiana v. Edwards* directly responds to this fallacy, recognizing that a defendant may be both competent to stand trial and incompetent to represent himself. 554 U.S. 164, 178, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). While *Edwards* framed its analysis in terms of mental illness, its holding nonetheless demonstrates that the inquiries into competency to stand trial and eligibility to represent oneself are distinct. *See Fletcher v. State*, 474 S.W.3d 389, 399–400, 2015 WL 4984532, at *8 (Tex.App.—Houston [14th Dist.] Aug. 20, 2015, pet. filed). A finding of competence to stand trial does not automatically qualify a defendant to also conduct his own defense; neither does a denial of self-representation disqualify a defendant from being found competent to stand trial.

The record does not demonstrate that the trial court abused its discretion by not conducting an informal inquiry into appellant's competency to stand trial subsequent to the formal evaluation. The trial court could reasonably have concluded that appellant's refusal to cooperate at trial was not fueled by a lack of rational understanding, but rather a desire to obstruct the trial proceeding. The record indicates that appellant understood the nature of the proceeding and was capable of consulting with his appointed attorney to a rational degree of understanding. He simply chose not to do so. Affording the trial court the great deference it is entitled to, we conclude that the court did not abuse its discretion by failing to conduct an informal competency inquiry.

We overrule appellant's second issue.

### III.

Appellant argues that his trial counsel, Ted Doebbler, was ineffective because he did not file a motion to suppress the cocaine that was found during the search of appellant's car. Appellant argues that his car was illegally stopped by police because the improper display of license plates was not an arrestable offense on the day of the stop—August 5, 2013. Under this theory, the stop and subsequent search of the car were both unlawful, requiring exclusion of the cocaine at trial. Appellant argues that a motion to suppress under this theory would have been meritorious and that Doebbler should have filed such a motion. Because he did not file the motion, appellant asserts, Doebbler was ineffective.

In a claim for ineffective assistance of counsel, the defendant must establish that counsel's performance was so deficient that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

---

6. The record includes a document styled, "EVALUATION SUMMARY: COMPETENCY TO STAND TRIAL," dated February 24, 2014, seven months before the beginning of trial. This summary indicates that Stephen Coats, Ph.D., a licensed psychologist, conducted a formal competency evaluation of appellant and concluded that he was competent to stand trial.

2052, 80 L.Ed.2d 674 (1984). The defendant must show that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. To establish deficiency, the defendant "must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms." *Smith v. State,* 286 S.W.3d 333, 340 (Tex.Crim.App.2009) (quoting *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002)). To demonstrate prejudice, the defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ Appellant's ineffectiveness claim rests on his incorrect assertion that improper display of license plates was not, on the day that he was pulled over, a criminal offense that could support a legal arrest. "An officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation was in progress or ha[s] been committed." *Kelly v. State,* 331 S.W.3d 541, 549 (Tex.App.—Houston [14th Dist.] 2011, pet. ref'd). On the day that appellant was pulled over by Officers Solis and Diaz, section 504.943(a)(2) of the Texas Transportation Code provided that "a person commits an offense if the person operates on a public highway, during a registration period, a motor vehicle that does not display two license plates that comply with department rules regarding the placement of license plates." Act of June 17, 2011, 82nd Leg. R.S., ch. 1296, § 221, 2011 Tex. Gen. Laws 1296 (amended 2013) (current version at Tex. Transp. Code Ann.

§ 504.943(a)(2) (West 2013)). In August 2013, the statute had no penalty provision corresponding specifically to it.[7] Appellant argues that the lack of penalty provision in section 504.943 at the time of the stop means that the violation of the statute was not one for which he could be lawfully stopped and detained. However, this argument overlooks another section of the statute—section 504.948(a), effective June 14, 2013—that provided a default penalty for any violation of section 504 for which "no other penalty is prescribed." Tex. Transp. Code Ann. § 504.948(a) (West 2011). Subsection (b) makes a violation of any provision contained in the subchapter containing section 504.943 a misdemeanor punishable by a fine. *Id.* § 504.948(b). The existence of this provision undermines appellant's entire theory regarding the motion to suppress that he believes that Doebbler should have filed. Appellant's *Strickland* argument therefore relies on a mistake of law and, as a result, is incorrect.

We overrule appellant's third issue.

### IV.

■ After his conviction and sentencing, appellant filed a motion for new trial, claiming that Doebbler was ineffective because he failed to investigate and build a mitigation case for the punishment phase of trial. Attached to the motion were two affidavits—one from appellant's counsel on appeal and one from appellant's mother. Appellate counsel's affidavit says that Doebbler told counsel that he did not call any witnesses during the punishment phase because appellant refused to give him any information about potential witnesses. In her affidavit, appellant's moth-

---

7. The current version of the statute went into effect on September 1, 2013 and now contains a specific penalty provision making a violation of the provision a misdemeanor pun-ishable by a fine not to exceed $200. Tex. Transp. Code Ann. § 504.943(e) (West 2011 & Supp.2015).

er states that she had an initial meeting with Doebbler, but that he did not make further contact with her after the meeting. Appellant's mother also stated that, if Doebbler had reached out to her, she "would have told the jury good things about [appellant]." Appellant requested a hearing on his motion for new trial. The trial court denied the motion. Appellant argues that the court erred in denying the motion and instead should have granted the motion because it raised reasonable grounds for relief.

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex.Crim.App.2009). If the trial court finds that the defendant-movant has "raised grounds that are both undeterminable from the record and reasonable," then it "has no discretion to withhold a hearing." *Id.* at 340. To be entitled to a hearing on an ineffectiveness claim raised in a motion for new trial, the movant "must allege facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different." *Id.* at 341.

Appellant alleges that Doebbler was deficient because he did not call any witnesses at the punishment stage of trial when there was "much good evidence to present, far outweighing the negatives." However, the only "good evidence" raised with the motion are the "good things" that appellant's mother says that she would have told the jury had she been asked to testify. Neither appellant's mother's affidavit nor the motion for new trial provide further detail about these "good things." While Doebbler's reasoning for not calling any mitigation witnesses at the punishment phase is not discernable from the

record, Lewis did not allege any facts that could reasonably sustain a *Strickland* claim. "Affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.* at 339. The court did not abuse its discretion in denying appellant a hearing on his motion for new trial.

We overrule appellant's fourth issue.

**V.**

In his last issue, appellant argues that the trial court erred in denying his request for a jury instruction under Texas Code of Criminal Procedure article 38.23(a). Appellant argues that the instruction should have been granted because of an alleged factual dispute at trial over whether appellant's passenger was reaching for something in the car after the officers stopped them. One arresting officer testified that the passenger was "reaching into the glove compartment doing something." The other officer testified that appellant and his passenger were "possibly" reaching forward, but that he could only see them above their shoulders. Appellant argues that this difference in testimony affects the legality of the search that produced the cocaine because, without the suspicion that appellant or his passenger was hiding something, there was no legal justification for searching the vehicle, and the cocaine was unlawfully obtained.

There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under article 38.23(a):

(1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining

the evidence ... If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence.

*Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App.2007).

Appellant asserts that trial counsel requested an article 38.23 instruction because of a conflict in testimony over whether his passenger was reaching for something as officers were approaching the car. As an initial matter, the State argues that this issue was not preserved at trial because the instruction requested at the charge conference was based on an alleged lack of probable cause—a legal determination, not the factual dispute that is being argued on appeal. Assuming without deciding that the error is preserved, we hold that the court did not err in denying the instruction.

Even if there was an affirmatively contested fact issue over whether or not appellant's passenger was reaching for something in the car when the officers approached, such a dispute is not material to the lawfulness of the search. A disputed fact "must be an essential one in deciding the lawfulness of the challenged conduct." *Madden*, 242 S.W.3d at 511. Under the Fourth Amendment "automobile exception," an officer may conduct a warrantless search of a vehicle incident to arrest if there is probable cause to "believe that the vehicle is transporting contraband," even contraband relevant to an offense other than the offense of arrest. *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Arizona v. Gant*, 556 U.S. 332, 347, 129 S.Ct. 1710,

173 L.Ed.2d 485 (2009). Appellant argues that the probable cause determination in his case rests on whether the arresting officers saw his passenger moving around in the car or reaching for something as they approached. However, the record indicates that the search was justified by the crack rock seen in plain view on the passenger's lap when the officers approached the car. "An officer's observation of contraband or evidence of a crime in plain view inside a vehicle can be used to establish probable cause to seize the contraband or evidence." *Adkins v. State*, No. 01–13–00627–CR, 2014 WL 5465701, at *5 (Tex.App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op., not designated for publication) (citing *Dahlem II v. State*, 322 S.W.3d 685, 689 (Tex.App.—Fort Worth 2010, pet. ref'd). If there is probable cause to justify the seizure of contraband and search of the interior of the vehicle, then the search of "every part of the vehicle and its contents that may conceal the object of the search" is justified. *Dahlem II*, 322 S.W.3d at 689 (citing *Ross*, 456 U.S. at 825, 102 S.Ct. 2157). Here, both officers testified to having seen the rock of crack cocaine in the passenger's possession before they embarked on the search of the vehicle in which the cocaine was uncovered. This undisputed fact is, by itself, sufficient to support the legality of the search. *See Miller v. State*, 608 S.W.2d 684, 685 (Tex.Crim.App.1980) (marijuana seeds justified search of entire vehicle for more marijuana); *Cunningham v. State*, 11 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (marijuana residue in plain view provided probable cause to search for more marijuana); *Cruz v. State*, No. 05–14–00144–CR, 2015 WL 534582, at *4 (Tex.App.—Dallas Feb. 9, 2015, no pet.) (mem. op., not designated for publication) (contraband in plain view "sufficient to constitute probable cause to search the vehicle").

Under *Madden*, the fact issue that appellant raises is immaterial to the ultimate admissibility of the evidence and should not have been submitted to the jury. The trial court did not err in denying appellant's requested instruction.

## Conclusion

Having overruled all five of appellant's issues, we affirm.