

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00092-CR

---

ANTHONY SCOTT WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 22F0222-202

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Bowie County jury found Anthony Scott White guilty of injuring a child and assessed a sentence of ten years' imprisonment. On appeal, White argues that the trial court erred (1) by not permitting him to represent himself at trial and (2) by failing to rule on his second pro se recusal motion.[1]

We find no abuse of discretion in the trial court's decision that White was unable to represent himself because he was unwilling to abide by rules of procedure and courtroom protocol. We also find that the trial court was not required to rule on White's second pro se recusal motion since he was represented by counsel, who did not support the motion, and was not entitled to hybrid representation. As a result, we affirm the trial court's judgment.

## I. Factual and Procedural Background

White's indictment in this case was filed on April 7, 2022, and he retained an attorney to represent him. In response to his indictment, White filed a pro se motion to dismiss the charge and asserted a "counter [c]harge" for civil conspiracy raising complaints about jail staff. The history of this case shows that White was focused on addressing his complaints, obtaining dismissal of the charge against him, and delaying the trial instead of facing it.

At an August 2022 hearing, White informed the trial court that he was in the process of hiring another attorney, and the trial court admonished him to do so by September. White, who was still being represented by his original retained counsel, failed to hire new counsel by the

---

[1]In companion cases 06-23-00093-CR, 06-23-00094-CR, and 06-23-00095-CR, White appeals convictions for abandoning or endangering a child. In companion cases 06-23-00096-CR and 06-23-00097-CR, White appeals convictions for criminal mischief.

time of either the September or October hearings. At the October hearing, White informed the trial court that he wished to represent himself instead of allowing his retained attorney to represent him because, among other things, counsel failed to seek dismissal of the charge. White's retained attorney also informed the trial court that he wished to withdraw from the representation due to various disagreements with White. The trial court allowed retained counsel to withdraw.

During a November hearing, White informed the trial court that he had not yet retained an attorney and wished to represent himself. White said he "want[ed] to press charges against people in the jail for violating" his rights. The trial court explained that it was not dealing with White's "counter [c]harge" and set a *Faretta*[2] hearing for January 2023. That month, while in jail awaiting trial, White damaged jail property and was indicted for criminal mischief.

In February, the trial court held a *Faretta* hearing to admonish White about the dangers of self-representation before determining if he knowingly, intelligently, and voluntarily waived his right to counsel. Despite the trial court's attempt to focus White on the question of self-representation, White complained about his former counsel and argued that the evidence was "insufficient . . . to even go to trial on." As the trial court proceeded with the hearing, White said,

> Your Honor, I feel like the Court's been prejudiced toward me. This is a whole year I've been waiting for litigation. It's been causing indigestion. I would like to have a change of venue, moved to a different county, and also I would like to recuse you from being on my case.

---

[2]*Faretta v. California*, 422 U.S. 806 (1975).

White then focused on his allegations that his civil rights were being violated in the jail. The trial court stopped the *Faretta* hearing because of the recusal motion and stated,

> This case has been pending for a year, and today was the first day we had an opportunity to have a hearing on his issue of self-representation, and [White] could not remain focused on what was at hand, which was the issue of the *Faretta* hearing. Instead, we discussed everything else, which makes me question whether or not he's capable of representing himself.

The recusal motion was referred to the presiding judge of the Tenth Administrative Judicial Region, who denied White's motion. On February 17, the trial court appointed counsel from the public defender's office to represent White. In March, White again destroyed jail property, leading to a second indictment for criminal mischief.

At the next hearing, the trial court began by noting that White's *Faretta* hearing had not gone well. The court then stated, "I appointed [counsel] to represent him." After the trial court explained to White that he was going to be tried on the charges against him, White said, "Your Honor, this Court is being prejudiced towards me. I told you these people are raping me in [jail]. They're gassing me, putting chemicals on me . . . . My rights is being violated, and you ain't even recognizing me in court." As for the charges against him, White said they "shouldn't even have went through the grand jury." He continued, "There's no evidence against me. I haven't committed any crime." When the trial court explained that the jury would decide whether there was enough evidence to convict, White called the trial court a "[k]angaroo ass court."

The State commented that it would move to restrain White at trial based on his conduct, indicating that White's conduct at the hearing was inappropriate. The State's written motion to restrain White during trial stated,

4

The defendant has made repeated outbursts at pretrial hearings and has demonstrated a clear pattern of aggressive behavior before, during, and after his court appearances. The Court has made adjustments to the Court's schedule so that the defendant appears at special times and dates to enable the Sherriff's [sic] Department to assign a sufficient number of transport deputies due to Anthony White's aggressive and combative behavior toward the Court.

At the hearing on the State's motion to restrain him, White (1) objected to witness testimony out-of-turn, (2) disregarded the court's warnings to keep silent during witness testimony, (3) argued about pro se motions "about the conspiracy of sedition of your court," (4) rehashed his complaints against jail staff, and (5) was generally disruptive. White again asked to represent himself but was removed from the courtroom for his repeated outbursts.

During the hearing, Lance Cline, an investigator with the Bowie County District Attorney's Office, described White as "[s]ix-one, six-two . . . close to 200, 180 [pounds]" and testified that he posed a risk to the court's security. Cline testified,

> "[White] has figured out how to pry the doors off the wire runs inside the jail, and he'll take that door and – I mean, it, itself, is a heavy weapon. . . . He mule kicked the ad seg door on the jail, and he's bent that door. That door is – I've never even heard of that."

Cline noted that White had "expressed a great deal of rage toward the participants of the court," including the judge. The State said, "I think that all of us have been dealing with Anthony White, that the record, there's no way could reflect the rage in his voice, the screaming in his voice. He's threatened everybody. The carrying on, it just almost thunders in here."

Robby McCarver, chief deputy for the Bowie County Sheriff's Office, described White's strength as "exceptional" and testified that he was "probably [their] most difficult inmate of the roughly 525 [they have] incarcerated." McCarver said White "utilizes his time to consistently

5

cause havoc. McCarver continued, "It's constant extra jail staff, constant damage to the facility, costing the county money on the facility, and then as you see in here, extra security for any court proceedings that we have." He clarified, "The manpower we use for him is equivalent to a van load of 10 or 12 [staff], for most visits here at the courtroom."

At the conclusion of the hearing, the trial court commented that it had appointed counsel "after the [*Faretta*] hearing, when [White] refused to participate and did nothing but yell" and added, "I mean, we can't conduct a trial without that going on." After an evidentiary hearing, the trial court granted the State's motion to restrain White during trial, adding, "[O]ne thing that glares, he's the most difficult inmate I have out of 535 people in jail right now, most difficult. That is not a badge of honor."

On the day of voir dire, the trial court admonished White of the importance of being respectful, remaining silent, and communicating with trial counsel instead of making outbursts. White said, "So why is nobody addressing the issues I've been having in this jail[?]" When White asked why he was still being represented by appointed counsel, appointed counsel explained, "The judge determined that because you would not follow the rules of procedure, which means that you need to stay quiet during the proceedings and stuff, that he didn't think that you were qualified to represent yourself."

## II. Denial of White's Request for Self-Representation Was Not an Abuse of Discretion

In his first point of error, White argues that the trial court erred by failing to allow self-representation. Based on the record before us, we disagree.

6

## A.    Relevant Law and Standard of Review

The Constitution guarantees a defendant who "knowingly and intelligently" waives the right to counsel the right to proceed pro se at his trial. *Faretta*, 422 U.S. at 835. The defendant "must be free personally to decide whether in his particular case counsel is to his advantage" and "his choice must be honored out of 'that respect for the individual,'" even if that choice ultimately may be to his own detriment. *Id.* at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 351 (1970)).

Even so, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.* at 834 n.46. "[A]n accused has a Sixth Amendment right to conduct his own defense, provided only . . . that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984); *see Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992) (orig. proceeding) ("[I]f the accused maintains his desire to proceed *pro se*, he should be allowed to so proceed so long as the assertion of his right to self-representation is . . . not asserted to disrupt or delay the proceedings."). As a result, "self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" is not required. *Faretta*, 422 U.S. at 834 n.46. "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Lewis v. State*, 532 S.W.3d 423, 430 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (quoting *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000)).

"Therefore, trial courts are afforded the discretion to deny self-representation by a defendant who 'deliberately engages in serious and obstructionist misconduct' or 'abuse[s] the dignity of the courtroom.'" *Id.* (alteration in original) (quoting *Faretta*, 422 U.S. at 834 n.46). "Because the trial court's decision to deny self-representation based on deliberately obstructive behavior turns on an evaluation of credibility and demeanor, we afford almost total deference to that decision." *Id.* (citing *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010)); *see Lathem v. State*, 514 S.W.3d 796, 802 (Tex. App.—Fort Worth 2017, no pet.) ("We review the denial of a defendant's request for self-representation for an abuse of discretion.").

### B.    Analysis

"[A]n accused's right to represent himself . . . cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). The trial court witnessed White's behavior firsthand at many pretrial hearings and determined that he would be unable to follow court procedure and would delay and disrupt the proceedings. We find no abuse of discretion in the trial court's decision based on the record before us.

The transcripts show that White did not wish to be tried on the charge against him and instead believed he was entitled to dismissal of the charge for lack of evidence. After months of delay due to White's initial statement that he wanted to hire new counsel, White informed the trial court that he wanted to represent himself. Although the trial court attempted to focus White on the issue of self-representation at the *Faretta* hearing, White instead focused on his allegations against jail staff and alleged lack of evidence against him. When the court explained

8

that the trial would determine the outcome of his guilt/innocence, White moved to change venue and recuse the trial court, resulting in additional delay. "When a defendant asserts irrelevant . . . arguments, it becomes difficult to discern whether he lacks a complete understanding of the proceedings or whether he is simply attempting to subvert them." *Lewis*, 532 S.W.3d at 431. "The trial court's own assessment, therefore, is critical . . . ." *Id.* Here, the trial court was free to conclude that White was attempting to subvert its orderly proceeding and delay the trial.

Also, White demonstrated a pattern of disruptive behavior and lack of respect for the trial court and posed a heightened security risk. The record shows that White had repeated outbursts, yelled, cursed at the court, and was removed from the courtroom due to his behavior. The State showed that White was combative, destroyed jail property, and required additional staff during his transport to and from the courtroom for safety. At the hearing on the State's motion to restrain him, which the trial court granted, White forecasted how he would behave if allowed to represent himself at trial. He (1) objected to witness testimony out of turn, (2) disregarded the court's warnings to keep silent during witness testimony, (3) argued about irrelevant complaints against jail staff, (4) alleged that the trial court was engaged in a conspiracy against him, and (5) was generally disruptive. The trial court commented that White would not represent himself without disrupting the trial. Based on White's obstructionist misconduct aimed at redirecting the trial to his complaints against jail staff and his outbursts that abused the dignity of the courtroom, we agree with the trial court's conclusion that White would have disrupted the trial had he been allowed to represent himself.

9

For the foregoing reasons, we find that the trial court did not abuse its discretion by denying White's request for self-representation. *See Max-George v. State*, No. 14-16-00217-CR, 2017 WL 3270987, at *4 (Tex. App.—Houston [14th Dist.] Aug. 1, 2017, no pet.) (mem. op., not designated for publication). We overrule White's first point of error.

**III.    White Was Not Entitled to Hybrid Representation**

White's first recusal motion was referred to the proper administrative judge, who denied it. While represented by counsel, White made a second pro se recusal motion on the same grounds. The trial court did not consider that motion, which was not joined by White's counsel. In his second point of error, White argues that the trial court erred by continuing to preside over the case despite his second pro se motion to recuse the judge. We disagree.

White was not entitled to hybrid representation. As a result, the trial court could have disregarded White's pro se recusal motion. *See Tracy v. State*, 597 S.W.3d 502, 509 (Tex. Crim. App. 2020); *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("We agree that a defendant has no right to hybrid representation. We also agree that, as a consequence, a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel."); *Hazelwood v. State*, 838 S.W.2d 647, 650 (Tex. App.—Corpus Christi–Edinburg 1992, no pet.) ("In view of appellant's representation by [an] attorney . . . and the record's failure to show that the trial court gave appellant permission to proceed partially *pro se*, appellant could not require the trial court to consider his *pro se* motion to recuse."). Accordingly, we overrule White's last point of error.

## IV. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     November 20, 2023
Date Decided:       December 6, 2023

Do Not Publish

11