

# NUMBER 13-24-00483-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GERARDO SOLIS III,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS



## NUMBER 13-24-00484-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**GERARDO SOLIS III,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION ON ORDER OF ABATEMENT

### Before Chief Justice Tijerina and Justices West and Cron
### Memorandum Opinion Per Curiam

Appellant Gerardo Solis III challenges the revocation of his community supervision in two separate cases. Appellant argues that he was incompetent to stand trial, and "the trial court abused its discretion by not abating the matter and appointing an expert to evaluate [his] competency to stand trial." Because there was some evidence that

appellant was incompetent, and the trial court improperly weighed evidence of competency against evidence of incompetency, we agree. Accordingly, we abate the appeal and remand the cases to the trial court.

## I.     BACKGROUND

On August 8, 2022, pursuant to a plea bargain agreement with the State, appellant pleaded guilty in trial court cause number CR-1996-22-D for tampering with or fabricating physical evidence, a third-degree felony, and CR-1588-22-D for burglary of a building, a state jail felony. *See* TEX. PENAL CODE §§ 30.02(a), (c)(1), 37.09(a), (c). The trial court adjudicated appellant guilty of the offenses and suspended each sentence for two years.

On April 9, 2024, the State filed a motion to revoke community supervision in both causes.[1] The State alleged that appellant failed to report to his supervision officer from August 2023 through March 2024 and failed to pay various fines, fees, and court costs. The State later amended the motions, and added allegations among others that appellant "failed to participate in the Hidalgo County CSCD Mentally Impaired Caseload Program and/or submit to psychological and/or psychiatric testing and evaluation."

At the hearing on the motions on September 25, 2024, appellant's trial counsel advised the trial court that he believed appellant was "not competent to proceed" based on his "attempts to converse with him and in talking to his family." The trial court then asked appellant some questions about the proceedings:

The Court:     [Appellant], you understand I'm the judge?

Appellant:     Yes, ma'am. I do understand about that.

---

[1] The State filed a motion to revoke community supervision in both causes a year earlier, which the State later withdrew.

The Court: Okay. And you understand the gentleman next to you, that's your attorney?

Appellant: Yes, ma'am. I understand he's my attorney.

The Court: And you understand that one of his many obligations is to represent you and protect your legal rights?

Appellant: That's correct.

The Court: And you understand you're in a courtroom?

Appellant: Yeah, I do, ma'am. I understand about everything today.

After some back and forth about whether appellant received the motions to revoke, the trial court asked appellant's trial counsel if, "based on the examination here today," he had any reason to believe appellant was incompetent:

The Court: [Counsel], based on the examination here today, do you really have any reason, as an officer of the court, to make the announcement of your belief of incompetency?

Counsel: Very definitely, Your Honor.

. . . .

Counsel: In trying to talk to him, Your Honor, the few times I've seen him at the jail and here, he does not respond to my questions. He does not . . . [give] clear . . . answers . . . [to] the questions that I ask him.

The Court: Did you not believe that he answered my questions very clearly here this afternoon? Do you not agree with that statement?

. . . .

Counsel: No, I do not agree.

The Court: You don't think he answered my questions clearly?

Counsel: No, Your Honor. He's not clear.

4

The Court:    [Counsel], I want to know, as an officer of the court, you really believe that his answers have not been clear here today. I'm talking about today at this time.

Counsel:      He's responded to your questions, Your Honor, but he's not clear. I don't think he understands the questions.

The Court:    When you say not clear, he's answered everything clearly. He may not enunciate as much as we would like him to.

Counsel:      He doesn't even remember receiving notices of his motions, Your Honor.

The Court:    That's not unusual, [Counsel], for such a long period of time.

The trial court concluded that "[b]ased on the examination this afternoon," there was "no reason to create any doubt, suspicion or concern about the [appellant's] competency to proceed at this time." Appellant's trial counsel responded that appellant "doesn't respond" to his questions and that appellant "cannot assist [him] with his defense." With permission from the court, appellant's trial counsel then asked appellant if he understood "what these charges are about":

Counsel:      Do you understand what these charges are about?

Appellant:    No, but I do understand about the charges, because I don't have no charges. I just got pulled over, but it was just over the bad things.

Counsel:      The questions that I asked you about what they say you did, do you understand what they mean?

Appellant:    No.

Counsel:      Why not? You can't read?

Appellant:    I don't know how to read books.

Counsel:      You don't know how to read. You didn't go to school?

Appellant:    I didn't—no, not to read.

Counsel: Is this the first time you [have] look[ed] at [the motions to revoke]?

Appellant: Yes, Your Honor [sic].

The Court: [Counsel], just because someone can't read the English language does not mean they're incompetent.

The trial court continued the hearing.

Later in the hearing, appellant's grandmother, Blanca Cantu, testified. Cantu testified that she tried to help appellant get to his probation appointments but "he went back to doing drugs," and the drugs prevented him from attending his probation appointments. She also testified that appellant could not go to his probation appointments because he is not "in his five sense[s]." Appellant's trial counsel asked Cantu if she believed that appellant was "all right mentally":

Counsel: Is he all right mentally in your opinion?

Cantu: No.

Counsel: That's because he doesn't answer our questions—your questions and my questions; is that right?

Cantu: Yes.

. . . .

Counsel: Ms. Cantu, if you ask him a question, [appellant] always say yes, yes, but does he understand what you're saying?

Cantu: No. He's very—he is very respectful, and if I would say, [appellant], yes, ma'am, no, ma'am, but did you hear what I said, what I asked you? Yes, mom, no, mom.

Counsel: He's very proper, but he doesn't know what you're asking him?

Cantu: (Moving head side to side.)

Counsel: Is that your opinion?

6

Cantu: Yes. All he asks from me is coloring books and colors, and that's all he does. His mind, I don't know, the drugs put him in that.

At the conclusion of the hearing, the trial court found all of the State's allegations to be true and revoked appellant's community supervision. The trial court sentenced appellant to one-hundred and eighty-days' imprisonment as to the burglary charge and two years' imprisonment for the tampering with physical evidence charge, to run concurrently. This appeal followed.

## II. DISCUSSION

### A. Standard of Review & Applicable Law

We review a trial court's failure to conduct a competency inquiry under an abuse of discretion standard. *Montoya v. State*, 291 S.W.3d 420, 425–26 (Tex. Crim. App. 2009), *superseded by statute on other grounds as recognized in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013). In determining abuse of discretion, we do not substitute our judgment for that of the trial court but rather determine whether the trial court's decision was arbitrary or unreasonable. *Id.* at 426. We give "great deference" to the trial court's assessment of a defendant's ability to understand the proceedings and to assist counsel. *Lewis v. State*, 532 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003)).

"As a matter of constitutional due process, a defendant that is not competent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (citing *Turner*, 422 S.W.3d at 688). "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the

7

proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46.003(a). "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* art. 46.003(b). The same standard applies to a revocation hearing. *See McDaniel*, 98 S.W.3d at 709–10; *see also Alvarez v. State*, No. 13-20-00308-CR, 2021 WL 4313115, at *3 (Tex. App.—Corpus Christi–Edinburg Sept. 23, 2021, pet. ref'd) (mem. op., not designated for publication).

"Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial[:] [t]he first step is an informal inquiry; the second step is a formal competency trial." *Boyett*, 545 S.W.3d at 563. The "informal inquiry" is triggered by any "suggestion" of incompetency to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004; *Turner*, 422 S.W.3d at 692–93. "At the informal inquiry, there must be 'some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.'" *Boyett*, 545 S.W.3d at 563 (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). "If that requirement is met, then the trial court must order a psychiatric or psychological competency examination, and except for certain exceptions, it must hold a formal competency trial." *Id.* (citing TEX. CODE CRIM. PROC. ANN. arts. 46B.005(a), (b), 46B.021(b)).

During the informal inquiry, the "trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id.* at 564. "[S]ome evidence must be presented . . . to show that a defendant's mental illness is the source of his inability to participate in his own defense."

8

*Id.* "[I]t is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness." *Id.* (citing *Turner*, 422 S.W.3d at 696). "[T]he proper inquiry at this stage is whether, putting aside all competing indications of competency . . . there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Id.* at 565 (citation modified). "[W]hile the evidence must be specific— meaning that it demonstrates more than mere mental illness and more than a mere failure to cooperate with defense counsel—there does not need to be much of it to require the trial court to take further action." *Clark v. State*, 592 S.W.3d 919, 926 (Tex. App.— Texarkana 2019, pet. ref'd).

## B.   Analysis

We first address appellant's contention that the trial court failed to conduct an informal inquiry into appellant's competency at the September 25 hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). Appellant points to Article 46B.024 for authority, which lists several factors that must be considered in a psychological competency examination. *See id.* art. 46B.024(1)–(5). He argues that because the trial court did not utilize these factors, it made no informal inquiry into his competency to stand trial.

However, the trial court is not required to consider the Article 46B.024 factors in an *informal* competency inquiry. *See id.* art. 46B.004(c-1). In fact, the Code of Criminal Procedure does not provide specific guidance as to how to conduct the informal inquiry. *See id.* arts. 46B.001–.171; *George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (concluding that "the trial court was not required to follow

9

specific protocols" in making its informal inquiry into appellant's competency); *see also* *Teal v. State*, No. 01-10-00506-CR, 2011 WL 6140676, at *2 (Tex. App.—Houston [1st Dist.] Dec. 8, 2011, pet. ref'd) (mem. op., not designated for publication) ("As its name suggests, an 'informal inquiry' does not have specific formal requirements."). Here, appellant's trial counsel informed the trial court that he believed appellant was incompetent to stand trial, and the trial court asked appellant questions related to his understanding of the proceedings. The trial court concluded that based on "its examination" there was "no reason to create any doubt, suspicion or concern about the defendant's competency to proceed at this time."

We will assume without deciding that the trial court made an informal inquiry;[2] however, as discussed below, we agree with appellant that the trial court abused its discretion when it failed to order a formal psychological evaluation into appellant's competency.

When conducting an informal inquiry into a defendant's competency, the trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency. *Boyett*, 545 S.W.3d at 564. Here, the trial court was presented with evidence from appellant's trial counsel that, due to his mental illness, he was unable to understand the questions counsel asked him. When trial counsel questioned appellant, appellant testified in pertinent part that he did not

---

[2] We make no comment on the adequacy or sufficiency of the trial court's informal inquiry. *See, e.g.*, *Bautista v State*, 605 S.W.3d 520, 530 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding "that the trial court's three closed-ended questions" did not constitute an informal inquiry because "there [wa]s no indication in the record that the purpose of the three questions was to fulfill the requirements of an informal competency inquiry"); *Jackson v. State*, 391 S.W.3d 139, 142 (Tex. App.—Texarkana 2012, no pet.) (concluding that "the trial court's own observations coupled with the inquiry to counsel regarding competency was a sufficient informal inquiry into [appellant's] competence").

understand counsel's questions, and he gave a conflicting and incoherent answer as to whether he understood the charges against him. The State's motion to revoke specifically alleged that appellant was required to participate in "the Hidalgo County CSCD Mentally Impaired Caseload Program and/or submit to psychological and/or psychiatric testing and evaluation" as part of his community supervision. Moreover, Cantu later testified that appellant was not "alright mentally," that he "doesn't know what you're asking him" despite his affirmative responses, "all he does" is color, and "the drugs put him in that [state]."

We find that the cumulative force of the aforementioned evidence constitutes at least "some evidence" that appellant was incompetent. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *Boyett*, 545 S.W.3d at 563. When considering only the evidence of appellant's incompetency, the evidence showed that appellant may have suffered from a mental illness which was the "the source of his inability to participate in his own defense." *See Boyett*, 545 S.W.3d at 564. In other words, there was at least some evidence that appellant lacked "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against [him]." *See* TEX. CODE CRIM. PROC. ANN. art. 46.003(a); *see also Williams v. State*, No. 05-24-00750-CR, 2025 WL 2456129, at *6 (Tex. App.—Dallas Aug. 26, 2025, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion when it did not order a formal competency evaluation because there was no indication or evidence from any source in the record that appellant was incompetent to stand trial).

The trial court, however, weighed this evidence against the "clear" answers appellant gave at the beginning of the hearing and concluded that there was "no

11

reason . . . or concern about the defendant's competency to proceed at this time." Here, the trial court "improperly considered evidence of appellant's competency rather than considering only evidence of [his] incompetency." *Boyett*, 545 S.W.3d at 558, 564–65 (holding that the court of appeals erred when it upheld "the trial court's determination that there was inadequate evidence of incompetency" because it "mistakenly focused its analysis on the evidence tending to show that appellant might be competent, rather than limiting its analysis to an assessment of the evidence of incompetency"). And while we must give great deference to the trial court's assessment of a defendant's ability to understand the proceedings and to assist counsel, *see Lewis*, 532 S.W.3d at 432, the "some evidence" standard is low. *See Turner*, 422 S.W.3d at 692 (concluding that "some evidence" means "a quantity more than none or a scintilla" (citing *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)); *Clark*, 592 S.W.3d at 926. We cannot find that there was *no evidence* from *any source* that appellant was incompetent. *See Boyett*, 545 S.W.3d at 563; *Turner*, 422 S.W.3d at 692; *Clark*, 592 S.W.3d at 926; *see also Williams*, 2025 WL 2456129, at *6.

Accordingly, we hold that the record shows some evidence that would rationally support a finding that appellant may have been incompetent to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *Turner*, 422 S.W.3d at 692, 696; *see also Williams*, 2025 WL 2456129, at *6. Therefore, the trial court abused its discretion when it continued the September 25th hearing and did not order a psychological competency examination of appellant. We sustain appellant's sole issue.

12

### III.    ABATEMENT

In this situation, the proper remedy is to remand to the trial court for a retrospective competency determination. *See Owens v. State*, 473 S.W.3d 812, 816 (Tex. Crim. App. 2015) ("We have long held that the appropriate remedy when there is an error in competency proceedings is to abate the appeal and remand the cause to the trial court to determine the feasibility of a retrospective competency proceeding."); *see, e.g.*, *Boyett*, 545 S.W.3d at 566 (abating the appeal and remanding to the trial court to determine whether it was feasible to conduct a retrospective competency trial, and if so, to conduct one). We, therefore, abate the appeal and remand the cases to the trial court. On remand, the trial court shall, within thirty days, first determine whether it is presently feasible to conduct a retrospective competency examination. If a retrospective competency trial is feasible, the trial court shall conduct one in accordance with Chapter 46B of the Texas Code of Criminal Procedure. If, on the other hand, the trial court finds that the retrospective competency trial is not feasible, the record of the proceedings shall be returned to this Court in accordance with this order.

Under either scenario, the trial court is ordered to prepare written findings within thirty days after it has determined whether a retrospective competency trial is feasible, and the results of such proceeding, if feasibly conducted. We further order (1) the district clerk forward a supplemental clerk's record containing the trial court's written findings within thirty days after the trial court files its written findings or order; and (2) that the court reporter for the 206th district court create a supplemental reporter's record containing a transcript of all proceedings associated with any retrospective competency trial and to file

13

the supplemental reporter's record with this Court within thirty days after the trial court files its written findings.

PER CURIAM

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of February, 2026.