Kem Thompson Frost, Chief Justice
Appellant Aaron Shawn Lindsey challenges his conviction, alleging that the trial court abused its discretion by not sua sponte conducting an informal inquiry into appellant's competency to stand trial. We conclude that the trial court did not abuse its discretion by failing to conduct an informal inquiry into appellant's competency because the record does not contain evidence suggesting that appellant was incompetent to stand trial. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
Appellant lived with the complainant in the complainant's apartment. The two men had lived together for about a year.
On New Year's Day, appellant was listening to rap music, and the complainant asked appellant to lower the volume. Appellant refused and the complainant told appellant to leave. According to the complainant, appellant became angry and strangled the complainant, causing him to lose consciousness. As soon as the complainant regained consciousness, appellant strangled the complainant again. The complainant stated that this strangulation followed by loss of consciousness happened four times. Eventually, appellant decided he wanted to go out to eat and went into the bathroom to get ready. The complainant then ran across the street to a neighbor's home, where the complainant contacted the police.
The complainant told police officers that appellant was the complainant's boyfriend and that appellant had strangled the complainant. The officers documented the complainant's condition, noting that the complainant had bitten his tongue and defecated on himself. Appellant was arrested and indicted for committing assault by strangulation against a family member after previously having been convicted of assault against a family member. Appellant pleaded, "not guilty" to the charge, but stipulated to the prior conviction.
Request to Proceed Pro Se
Before trial, appellant moved the trial court to dismiss his court-appointed attorney. The judge replied, "I'm not going to be terribly keen on you representing yourself. That's a recipe for disaster." Appellant then asked the court if the court *17 would appoint him a legal advisor if appellant represented himself. The trial judge initially stated that the court would appoint a legal advisor. After further questioning the trial judge took appellant's motion under advisement.
At a later hearing, appellant requested again to represent himself. The trial judge questioned appellant about his reasons for asking to proceed pro se. After a lengthy discussion, the trial court granted appellant's request to proceed pro se and appointed appellant a legal advisor. At a third pretrial hearing, appellant's legal advisor raised the issue of appellant's legal competence to represent himself. The advisor did not object to the trial court's characterization of the advisor's concern as a concern about appellant's legal competency to represent himself rather than his mental competency to stand trial. The trial judge allowed the legal advisor to ask appellant questions about his knowledge of the law and trial procedure. Appellant had read the Texas Code of Criminal Procedure, but appellant acknowledged that he did not know certain things about the rules of trial. Throughout this hearing, the trial judge continued to caution appellant against representing himself and offered appellant the option to change his mind again. Appellant stated that he would work with his legal advisor to learn the rules, but steadfastly maintained that he desired to represent himself. The trial court determined appellant could represent himself.
Voir Dire
Before trial, appellant participated fully in jury selection. Appellant opened his voir dire with an explanation of his past. Appellant made comments insinuating that he wanted to tell the venire panel more information about himself and about the case, but that he could not tell the venire panel everything that he wanted to tell them because of court rules. Appellant told the venire panel that he would dismiss anyone who did not want to be there serving on the jury. The trial judge admonished appellant, telling him that the comment was inappropriate. Appellant interrupted the judge to tell the venire panel that the deck was stacked against him and he was going to have a hard time representing himself.
Appellant did not confine voir dire to appropriate jury-selection questions, and at one point, appellant's legal advisor handed appellant a list of questions he might ask the venire panel. One of the venire members stopped appellant and told appellant that the prosecutor actually had given that list of the questions to the advisor. Appellant seized on this event to tell the jury that one of the reasons he was afraid to represent himself was because "there's some things going on that" appellant could not tell the venire panel because the judge ruled appellant could not discuss them. Appellant explained that the State was planning to strike venire members who seemed "beneficial" to appellant. Appellant explained, "And what I mean by 'beneficial' is somebody that would be more lenient for the whole situation. And what I mean by 'lenient' is-right now I'm confused. Okay? I'm okay. I'm of sound mind and everything. I just-everything-I'm going to read what's written here." Appellant then proceeded to ask the venire panel the questions listed on the paper.
During voir dire, a venire member asked to speak to the trial judge. The venire member told the trial judge that the venire member had concerns about appellant's "competency." The following exchange occurred:
[Venire Member]: I have a concern about the competency of the Defendant to be able to take-do this case. It is disturbing me, somewhat. And I don't know the rules of the Court, but based on TV- *18 [Trial judge]: Sure
[Venire Member]: -I have heard the Court can appoint a lawyer to defend the person. I don't want to be in a situation where I'm passing judgment on somebody because he can't do his job well enough to defend himself. That's my only concern.
Upon questioning by the prosecutor, the venire member explained that appellant's rambling during voir dire was frustrating and the juror could not stop thinking that appellant needed to stop rambling and ask his question.
Opening Statement
In appellant's opening statement, appellant explained that he was not in a family relationship with the complainant. The complainant and appellant are both male and appellant explained that he is not homosexual. Appellant stated that the complainant sexually assaulted appellant and then created the scene in the apartment to frame appellant. Appellant also explained that he was representing himself because in the past he worked with attorneys who did not look out for his best interests.
The complainant's testimony
At trial, the complainant testified that he and appellant were in a sexual relationship when appellant strangled him. During the cross-examination, appellant attempted to establish that appellant lived with the complainant and served as the complainant's caretaker while the complainant dealt with severe health problems, including dialysis, that required medical care. The complainant acknowledged that appellant had been an excellent caregiver, but maintained that appellant also shared a sexual relationship with the complainant.
During cross-examination, appellant asked the complainant one question about a book appellant had been writing. Appellant asked this question as one question in a line of questions in which appellant asked the complainant if the complainant was jealous that appellant was focused on returning to the life appellant had been living before dating the complainant. As part of this line of questioning, appellant gained admissions from the complainant that the complainant possibly could have manipulated the scene at the apartment to look like a struggle and that the complainant was physically capable of causing himself to suffer some of the injuries he suffered on the date of the alleged assault.
As part of a line of questions relating to the complainant's character, appellant also asked the complainant if the complainant told a mother rabbit that the complainant could not wait to eat the rabbit's babies. When the State objected to the question, appellant explained that the question showed the complainant's character.
Testimony of Officer Perry and Officer Dagle
Officer Zachary Perry testified that he took some photographs of the complainant and saw the apartment immediately after the incident. On cross-examination, appellant got Officer Perry to admit that one person could make the scene look the way it looked when Officer Perry responded.
Officer Jeffrey Dagle testified he also took photographs of the complainant and saw the apartment after the assault. According to Officer Dagle, the complainant had blood on his lip from biting his tongue. The officer took pictures of the complainant's neck. While cross-examining Officer Dagle, appellant stated at one point that he "did not know where he was going" with a particular question and was attempting to rephrase the question. The question appellant asked was whether the injury in the photograph was consistent with strangulation. Appellant posited that the injury in the photograph did not seem *19 to be severe enough to support the complainant's story. Appellant also recognized an inconsistency in Officer Dagle's testimony regarding the timing of appellant's arrest and when Officer Dagle issued appellant a citation. Wondering if he had been illegally detained, appellant asked the judge about the significance of the issue. The trial judge would not comment.
Appellant's longtime friend's testimony
During appellant's case-in-chief, appellant called a longtime friend. Appellant asked the friend if he knew why appellant was in court and the friend responded "not exactly." Appellant began explaining, and the State objected and then asked to approach the bench. The trial judge asked appellant the purpose of the witness and appellant said that he called the witness to establish appellant's credibility and character. The trial court explained that appellant could not buttress his credibility with a character witness. Appellant then asked one question with no objection before stating that he was confused and needed a minute. Appellant then resumed direct examination by focusing on questions related to appellant's relationship with the complainant.
At one point, appellant asked the witness if appellant was on any medication at the time of the alleged incident. The friend responded, "No. I mean, it's obvious you're not on your medication right now." The prosecutor objected to the statement and after the trial court sustained the objection appellant stated, "I don't know [sic] understand [sic] this is going. I'm completed confused." Appellant then resumed his examination, asking the friend if the friend was aware that appellant was not homosexual. Appellant also asked the friend if the friend was aware appellant was writing a book.
Appellant's brother's testimony
Appellant also called his brother as a witness. A few questions into appellant's direct examination, appellant's brother asked whether appellant was on his medication. Appellant did not respond but attempted to ask another question. Appellant's brother again asked appellant if appellant was on his medication. The State objected, and the trial court sustained the objection. Appellant continued with direct examination. Appellant's brother testified that appellant was not homosexual.
Appellant then asked his brother if his brother were to use one word to describe appellant, which word the brother would use, prompting the following exchange:
[Brother]: Mentally disabled.
[Appellant]: Mentally disabled?
[Brother]: Somewhat.
[Appellant]: Okay. And how do you mean by that?
[Prosecutor]: Objection, your Honor.
[Trial judge]: Sustained. Sustained. That's not something we're going to get into.
[Brother, continuing]: You're not the same brother that I grew up with. You've changed. You're not on your medication.
[Trial judge]: That's enough. Proceed by question and answer.
[Appellant]: You're aware that I'm not on any medication. I'm not prescribed any medication. Are you aware of that?
[Brother]: You were at one time. I remember.
[Appellant]: Yes.
[Brother]: You were a totally different person when you're on it.
[Appellant]: For being hyper. You know that, right?
[Brother]: Bipolar.
*20 [Appellant]: They say bipolar. It's mania, hyperness.
[Brother]: Right. It keeps you on the steady.
Appellant also asked his brother whether the brother was aware appellant previously had an "RV." Appellant established that he had an RV and the RV was stolen when appellant went to Louisiana to visit appellant's daughter. Appellant was able to establish that appellant could not pursue the return of the RV because he would have to pay a civil attorney and file suit.
Appellant's decision not to testify
Before appellant rested his case, appellant stated he did not intend to testify. The trial judge and appellant's legal advisor explained that appellant's closing argument would be limited to making an argument about the conclusion the jury should draw from the evidence presented at trial. The trial judge explained that if appellant did not testify, and the record did not contain any evidence of appellant's version of the facts, then appellant would not be able to argue his version of facts in closing. Appellant asked questions, including whether he could discuss particular issues. Appellant insisted he did not wish to testify. The following exchanged occurred:
[Trial judge]: But [your legal advisor is] telling you what I have been telling you, and I'm not sure you're hearing what I'm telling you. If you want to get up and argue tomorrow, "Here is what really happened," you can't. I'm going to stop you because there's no evidence to support that.
[Appellant]: Except for my opening statement.
[Trial judge]: That's not testimony. That's not evidence. I told you the purpose of the opening statement is for you to tell the jury what the evidence was going to show them and you said certain things. The evidence has not shown them that. What we've had is the State's version from Mr. Bateman and we've had some photographs-
[Appellant]: I can use his testimony, correct?
[Trial judge]: You can use his testimony.
[Appellant]: Okay. We're good.
[Trial judge]: But if you can [sic] get up and say, "Here's what really happened"-
[Appellant]: I don't have to get into that. We're-I'm good, your Honor.
[Trial judge]: Does anyone believe that he knows what I'm saying?
[Legal Advisor]: I don't believe so, your Honor.
Appellant rested without testifying. The State brought to the stand rebuttal witnesses that testified appellant was homosexual, and one witness described having once witnessed appellant receiving oral sex from a male.
Closing argument
The theme of appellant's closing argument was "the truth will set you free." During his closing argument, appellant told the jury that he admitted to difficult things during the trial, including that he was "gay curious." Appellant argued that he thought about becoming homosexual, but that he was not homosexual and so he was not in a sexual relationship or dating relationship with the complainant. Appellant also admitted that he had been in jail and that he was a functioning alcoholic.
Appellant told the jury he had been honest with the jury and that the truth was that he was not in a relationship with the complainant. Appellant also argued that the complainant was methodical and that the complainant fabricated the allegations against appellant because the complainant was jealous that appellant was *21 planning to move on with his life. Using the photographs of the scene, appellant argued that the disarray in the room did not make sense given the allegations. Appellant argued that the complainant raped him.
The jury convicted appellant of the lesser-included offense of "assault against a family member after previously having been convicted of assault against a family member." The jury assessed punishment at twenty years' confinement.
II. ANALYSIS
In his appellate brief, appellant asserts that (1) the trial court should have held an informal inquiry into appellant's competency to stand trial and (2) appellant did not knowingly and intentionally waive his right to an attorney.
A. Appellant's concession of his waiver issue
After appellant filed his brief, the State ordered supplemental records that contained the transcripts of the hearings in which the trial court admonished appellant about his decision to waive his right to counsel. At oral argument, appellant's counsel stated that in light of the supplemental records, appellant abandoned his argument that he did not knowingly and intentionally waive his right to an attorney. Appellant's counsel stated that appellant did not wish to pursue that issue because the transcripts made clear that the trial judge admonished appellant and that appellant understood the admonishments and intentionally and knowingly waived his right to counsel. Because appellant conceded the second issue at oral argument, we need not address it in this opinion. Even if appellant had not conceded this issue, the record shows appellant's waiver of his right to counsel was knowing, intentional, and voluntary. See Fletcher v. State , 474 S.W.3d 389, 397 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd).
B. Trial court's failure to conduct an informal inquiry into appellant's competency
We review a trial court's failure to conduct an informal inquiry into appellant's competency for an abuse of discretion. Hobbs v. State , 359 S.W.3d 919, 924 (Tex. App.-Houston [14th Dist.] 2012, no pet.). A defendant is not competent to stand trial if the defendant lacks (1) a sufficient present ability to consult with the defendant's attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against the defendant. Kostura v. State , 292 S.W.3d 744, 746 (Tex. App.-Houston [14th Dist.] 2009, no pet.). Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant is incompetent to stand trial. Smallwood v. State , 296 S.W.3d 729, 733 (Tex. App.-Houston [14th Dist.] 2009, no pet.). The trial court, on its own motion, "shall suggest that the defendant may be incompetent to stand trial" if evidence suggesting that the defendant may be incompetent to stand trial comes to the trial court's attention. Tex. Code Crim. Proc. Ann. art. 46B.004(b) ; Lewis v. State , 532 S.W.3d 423, 432 (Tex. App.-Houston [14th Dist.] 2016, pet. ref'd). In 2009, the Court of Criminal Appeals held that a trial court must have a bona fide doubt about a defendant's competency to stand trial to trigger an informal inquiry under article 46B.004. See Montoya v. State , 291 S.W.3d 420, 425 (Tex. Crim. App. 2009). The Legislature amended article 46B.004 to state specifically that the trial court is not required to have a bona fide doubt about a defendant's competency to trigger an informal inquiry. See Act of May 24, 2011, 82nd Leg., R.S., ch. 822, § 2, 2011 Tex. Sess. Law. Serv.
*22 1893, 1893; Turner v. State , 422 S.W.3d 676, 692 (Tex. Crim. App. 2013).
Under article 46B.004, a suggestion of a defendant's incompetency to stand trial may consist solely of a credible source's representation that the defendant may be incompetent. Tex. Code Crim. Proc. Ann. art. 46B.004(c-1). No further evidentiary showing is required, nor is the trial court required to have a bona fide doubt regarding a defendant's competency. Id. Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by article 46B.024 or on any other indication that the defendant is incompetent within the meaning of article 46B.003. Id. The relevant factors under article 46B.024 are:
(1) the capacity of the defendant during criminal proceedings to:
(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;
(B) disclose to counsel pertinent facts, events, and states of mind;
(C) engage in a reasoned choice of legal strategies and options;
(D) understand the adversarial nature of criminal proceedings;
(E) exhibit appropriate courtroom behavior; and
(F) testify;
(2) as supported by current indications and the defendant's personal history, whether the defendant:
(A) is a person with mental illness; or
(B) is a person with an intellectual disability;
(3) whether the identified condition has lasted or is expected to last continuously for at least one year;
(4) the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and
(5) if the defendant is taking psychoactive or other medication:
(A) whether the medication is necessary to maintain the defendant's competency; and
(B) the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.
Id. art. 46B.024.
Appellant argues the trial court was put on notice that the trial court should conduct an informal inquiry into appellant's competency because appellant (1) distrusted his legal advisor instead of communicating with his advisor, (2) rambled instead of engaging in reasonable legal strategy, (3) was confused at times during trial, (4) displayed inappropriate courtroom behavior, and (5) had a mental illness and was not taking his medication.
Distrust of legal advisor, witnesses, and the criminal justice system
Appellant asserts that the transcript from the trial showed that appellant distrusted his legal advisor, his own witnesses, and the criminal justice system. A few times during pretrial proceedings and at trial, appellant made statements that he did not trust the criminal justice system and had decided that he trusted himself for representation more than he trusted an appointed attorney. These statements did not show, however, that appellant could not communicate with his legal advisor or engage in a rational trial strategy. At the same time appellant stated he distrusted his advisor, appellant stated that he would work with his legal advisor to sort out any questions appellant had about procedure. The record shows appellant did work with *23 his legal advisor effectively to file motions and effect issuance of subpoenas. In context, the trial court reasonably could have concluded that appellant trusted himself more than his advisor, but these statements did not indicate an inability to work with his legal advisor. See Criswell v. State , 278 S.W.3d 455, 458-59 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (noting that a defendant's disagreement or dissatisfaction with counsel is not probative of competence to stand trial). Appellant's choice to proceed pro se rather than allow appointed counsel to represent him did not indicate a mental inability to communicate and work with counsel, but rather appellant's desire to represent himself. See ids="8158245" index="11" url="https://cite.case.law/sw3d/278/455/#p458">id. Similarly, although one might question the wisdom of appellant's choice to proceed pro se, appellant had rational reasons for making his decision. See ids="8158245" index="12" url="https://cite.case.law/sw3d/278/455/#p458">id.
Appellant indicated at one point that he did not trust his brother and appellant cut short appellant's direct examination of his brother. Appellant noted he was confused by his brother's testimony, but that would have been understandable because the brother did not respond directly to the questions appellant asked. Whether appellant trusted his brother is not probative of appellant's competency to stand trial. See Kostura , 292 S.W.3d at 746.
The record indicates that at times appellant made statements that indicated he did not trust the criminal justice system. For example, after the venire member revealed that the prosecutor had given appellant's legal advisor the list of questions that the legal advisor handed appellant, appellant told the jury that he was terrified to represent himself. At times, appellant made statements about the difficulty of representing himself in an unfamiliar system. Appellant points to a statement he made to the trial court that "it just seems like the powers that be are trying-that are against me are trying to crush me" after the trial judge told appellant that he could not change his mind, reopen his case, and decide to testify after the day before having decided that he wanted to close his case without testifying. Appellant was nervous and had concerns about being a novice in an adversarial system. Appellant also worried that some of the trial court's rulings prohibiting him from sharing certain information with the jury placed him at an unfair disadvantage. None of appellant's statements or concerns suggested appellant was incompetent to stand trial. See McDaniel v. State , 98 S.W.3d 704, 712 (Tex. Crim. App. 2003).
Rambling
Appellant asserts that he rambled and was unable to engage in a reasonable legal strategy. In particular, appellant points to (1) the venire member raising a concern about appellant rambling rather than asking appropriate questions during voir dire, (2) appellant's inability to confine his opening statement to discussing what the trial evidence would show, (3) appellant's failure to prepare witnesses who took the stand to testify during appellant's case-in-chief, and (4) appellant's statements during the punishment-phase hearing that related to guilt and innocence. Although some of appellant's statements may have been irrelevant to the proceedings or attempts to inject inadmissible evidence into the trial, none of appellant's statements indicate that appellant did not understand or appreciate what was going on or was unable to communicate and function rationally. See Hobbs v. State , 359 S.W.3d 919, 926 (Tex. App.-Houston [14th Dist.] 2012, no pet.) ; Kostura , 292 S.W.3d at 747-48. At times, appellant addressed the jury inappropriately, but neither appellant's breach of decorum nor his failure, at times, to follow the rules of evidence suggested appellant did not understand *24 what was happening. See George v. State , 446 S.W.3d 490, 501 (Tex. App.-Houston [1st Dist.] 2014, pet. ref'd). Appellant's rambling was not the type of bizarre behavior that might suggest incompetence. See ids="6905090" index="18" url="https://cite.case.law/sw3d/446/490/#p501">id. Appellant's behavior, while imperfect and rude, at times, did not suggest incompetency. See ids="6905090" index="19" url="https://cite.case.law/sw3d/446/490/#p501">id. Without commenting on the politeness of appellant's actions, we note that appellant followed the trial court's directives and acted appropriately in that at all times appellant acted as if he were in a courtroom trying a case.
Although the venire member voiced a concern about appellant's competency, the venire member's comments related to appellant's lack of legal skill, not lack of mental competency. Lack of legal skill or mediocre legal strategy does not show a defendant is incompetent to stand trial. See Lewis , 532 S.W.3d at 433. None of the concerned venire member's comments related to appellant's understanding of the proceedings or appellant's ability to communicate effectively with his legal advisor. Id. Though one could speculate about whether appellant might have pursued a better trial strategy, none of appellant's statements or rambling suggested that appellant did not have a rational trial strategy. See ids="12386891" index="22" url="https://cite.case.law/sw3d/532/423/#p432">id.
Confusion
Appellant points to places throughout the transcript where appellant stated that he was confused during the trial. In the context of a trial, laymen (and sometimes lawyers) can find legal principles, procedural rules, and the court's rulings perplexing. Appellant expressed confusion at various points. Appellant initially confused one testifying police officer with another police officer. Appellant was confused when a police officer testified that he signed the warrant for appellant's arrest at a different time than the time reflected on the warrant. Appellant was momentarily confused by the trial court's ruling that he could not introduce evidence to bolster his character, and appellant became confused when his brother got on the stand and testified that appellant was not on his medication. Although there were instances in which appellant stated he was confused, the record shows that after he stopped to think for a moment or received an explanation from the trial court, appellant understood well enough to continue with trial. Appellant's isolated instances of confusion did not show that appellant was incompetent to stand trial. See Hobbs , 359 S.W.3d at 925-26.
In addition to appellant's statements at trial, there were times appellant stated he was confused during conversations with the trial judge. For example, the trial judge expressed concern that appellant might not understand the implications of appellant's decision to not testify and the way that decision would impact appellant's closing argument. The judge asked if anyone in the courtroom thought appellant understood the implication of her ruling. The next day, appellant stated that he got confused the day before when he rested his case without testifying. The trial judge's question about whether anyone in the courtroom believed appellant understood what the trial judge was saying related to the trial judge's attempt to explain a complicated legal concept-that unless appellant testified the record would not contain evidence of his version of events, so he would have no means of presenting his version of events to the jury. Even if appellant did not quickly grasp this concept, any inability to learn and apply the rules of evidence on the fly in the middle of a trial does not show appellant was incompetent to stand trial or could not engage in a reasoned choice of legal strategy. Cf.
*25 Lewis , 532 S.W.3d at 433 (holding that legal competence is distinct from competence to stand trial). Though appellant may not fully have grasped the implications of his choices, even the exchange in which the trial judge asked if anyone thought appellant understood the implications of appellant's decision showed that appellant was making a reasoned choice of legal strategy. In deciding not to testify, appellant asked the judge if he could discuss the photographs that came into evidence and if he could discuss the complainant's testimony. Upon the judge's affirmative answer, appellant indicated that he had everything he needed and did not need to take the witness stand.
Appellant stated he was confused at one point during deliberations when the jury asked the trial judge a question and the trial judge had to explain that the trial judge-not appellant-answers the question. But, appellant understood after the trial judge explained the procedure. Appellant's initial confusion about procedure or legal rules does not show he was incompetent to stand trial. Cf. ids="12386891" index="25" url="https://cite.case.law/sw3d/532/423/#p432">id. To the contrary, the exchanges to which appellant points as showing he was incompetent to stand trial show appellant listening to the trial judge's explanation and making a reasoned decision about how to proceed.
Inappropriate behavior
Appellant contends that his disruptive behavior showed he was not competent to stand trial. Appellant points out that he interrupted the trial judge, causing the trial judge to admonish him. Appellant inappropriately asked the trial judge about the legal significance of an admission he received from a police officer during his cross-examination of the police officer. Appellant also notes that he was disruptive and inappropriately addressed the jury on several occasions. Appellant's lack of courtroom etiquette does not equate to mental incompetence. Although appellant violated decorum by speaking out of turn, appellant did not exhibit the type of bizarre behavior that suggests he was incompetent to stand trial. See Hobbs , 359 S.W.3d at 926 ; George , 446 S.W.3d at 501.
Mental illness
Appellant's brother testified that appellant was mentally disabled and at one point had been diagnosed with bipolar disorder and put on medication. According to the brother, appellant was not the same at trial as he was when he was on his medication. Appellant's longtime friend also testified that it was obvious appellant was not on his medication. Appellant agreed with his brother that he was not on medication but asked the brother if the brother was aware that appellant currently was not prescribed any medication.
Even if the testimony of the brother and friend sufficed to bring to the trial court's attention a history of mental illness, appellant's history of mental illness does not suggest he was incompetent to stand trial. See Turner v. State , 422 S.W.3d 676, 691 (Tex. Crim. App. 2013). Under article 46B.024, mental illness is a factor in assessing competency only if there are current indications of mental illness supported by the defendant's personal history. See Tex. Code Crim. Proc. Ann. art. 46B.024(2)(A). To suggest incompetency, the record would need to show that the mental illness prevented appellant from rationally understanding the proceedings against him or engaging with counsel to pursue his best interests. See Turner , 422 S.W.3d at 691.
Appellant's brother testified that he had not seen appellant in over a year. Appellant was not in denial about the past diagnosis, but implied that presently he was not prescribed any medication. Evidence that appellant had been diagnosed with *26 bipolar disorder, that appellant was not taking medication, and that appellant was not "the same" as he was while taking his medication did not suggest appellant was incompetent because there was no evidence of a present impairment and the record did not contain any evidence that any mental illness prevented appellant from rationally understanding the proceedings or pursuing his best interests. See McDaniel , 98 S.W.3d at 712 (holding that evidence the defendant suffered bipolar disorder did not obligate trial court to make informal inquiry into defendant's competency); Hobbs , 359 S.W.3d at 925 ; Jackson v. State , 391 S.W.3d 139, 143 (Tex. App.-Texarkana 2012, no pet.). Appellant's brother's statement that he would describe appellant as mentally disabled was not evidence of a present mental disability from a credible source. See Dominguez v. State , No. 08-14-00225-CR, 2017 WL 5167547, at *9 (Tex. App.-El Paso Nov. 8, 2017, no pet. h.).
Overall assessment of appellant's statements and behavior
Considering the cumulative effect of appellant's statements and actions and the context in which they were made, the trial court did not abuse its discretion in failing to suggest appellant was incompetent. The record reveals that appellant understood the charges against him. Although his decision to proceed pro se may have been unwise, and appellant struggled at times to apply the rules of evidence, appellant made conscious and rational choices about his legal strategy. Appellant reasoned that he trusted himself to prepare for trial with the assistance of his legal advisor. Appellant focused on the elements of the offense that the prosecution was required to prove and appellant attacked certain elements. Appellant argued to the jury that he was not in a family relationship with the complainant and that the complainant fabricated the allegations. Although appellant was not perfectly prepared for each witness, he elicited testimony tending to show that he was not in a family relationship. Similarly, appellant gained admissions on cross-examination that supported his defensive theory.
Appellant's statements that he was nervous and distrusted the system showed he understood the adversarial nature of the criminal proceedings. While appellant at times spoke out of turn, appellant followed trial procedures well enough to complete trial. When it came time to decide whether to testify, appellant asked extensive questions about what type of evidence he could use in closing argument if he failed to testify and appeared to weigh the considerations in making his decision. Although some evidence suggested that appellant had been diagnosed with bipolar disorder and, at one time, had been prescribed medication, the record showed appellant understood the proceedings against him and could engage with his legal advisor. No evidence showed appellant was failing to take medication currently prescribed. Based on this record, we conclude the trial court did not abuse its discretion in failing to suggest that appellant was incompetent to stand trial. See Hobbs , 359 S.W.3d at 925. We overrule appellant's only issue.
III. CONCLUSION
The trial court did not abuse its discretion by failing to suggest appellant was incompetent to stand trial because the record did not contain evidence suggesting appellant was incompetent to stand trial. Having overruled appellant's issue, we affirm the trial court's judgment.