**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00390-CR**

_____

**JEREMY C. MACDONALD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-03-03529-CR**

**MEMORANDUM OPINION**

A Montgomery County grand jury indicted Jeremy C. MacDonald for the offense of possession of a controlled substance, specifically methamphetamine, with intent to deliver in an amount greater than four grams but less than 200 grams, a first-degree felony. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.112(a), (d). The State proceeded on the lesser-included charge of possession of a controlled substance. *See id.* § 481.115(a), (d). Following trial, where MacDonald appeared pro se, the jury found him guilty of possession of a controlled substance, a second-degree

1

felony. *See id.* The trial judge assessed punishment at ten years of confinement but suspended the sentence and placed MacDonald on probation for four years based the parties' agreement as to punishment. In two issues, MacDonald asserts (1) the trial court failed to properly admonish him on the dangers of self-representation, and (2) the trial court failed to suggest sua sponte that he may be incompetent to stand trial under Texas Code of Criminal Procedure article 46B.004. As discussed below, we affirm the trial court's judgment.

## BACKGROUND

### Pretrial Matters and Self-Representation

Prior to and during trial, MacDonald expressed beliefs that he was an "American National," a member of the "American National Union," claiming that the United States was not a country, that he was not subject to the laws, and he had placed everything in a trust. He distinguished these beliefs from those of a "sovereign citizen." He also referred to himself as a "trustee." The clerk's record shows that he filed various documents he had previously executed as part of his "American National" beliefs.

At docket call for an August 2021 trial setting, MacDonald said he was "not ready." When the trial court asked if he was represented, MacDonald said he had a lawyer and identified him by name but explained he was not licensed in Texas. The trial court granted MacDonald's oral motion for continuance and moved the setting

2

to September 20, 2021. The trial court told MacDonald that he would either need a licensed attorney who would send a letter on his behalf or if he chose to represent himself, then she would admonish him and have him sign a waiver. MacDonald responded that he would not recognize an attorney licensed by the State of Texas.

At docket call in early September 2021, the trial court noted the prior settings. The trial judge explained that MacDonald informed her that he employed representation, but further examination showed the individual was not licensed in any state, including Texas, and had since filed a "motion to withdraw." The trial court gave MacDonald a copy of an admonishment and waiver of the right to counsel, then read it aloud:

> I have been advised on September 2nd, 2021 by Judge Patty Maginnis, 435th District Court, of my right to representation by counsel in the case pending against me. I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge. Understanding my right to have counsel appointed for me free of charge if I am not financially able to employ counsel, I wish to waive that right and request the Court to proceed with my case without an attorney being appointed for me. I have hereby waived my right to counsel.

The trial court also explained,

> This waiver only deals with your court appointed representation or retained representation. It does not impact any other right that you have, but in order for your case to go forward, I need to know if you are representing yourself or if you are retaining counsel or if you are requesting court appointed counsel after being found indigent.

MacDonald said that he understood the document. He conveyed that the "notice of withdraw" filed by his "representation" said that they were waiting for him to

3

finalize the affidavit, but the trial court again explained that the individual was not a licensed attorney. MacDonald mentioned an "International Lawyer Association," but the court responded that was not recognized for purposes of his case. The trial court again inquired if he would retain counsel or waive his right to counsel, and MacDonald responded he would retain counsel, naming the same unlicensed individual. When the trial court again answered that the individual was not a licensed attorney, MacDonald responded that his representation was a "human rights defender, private international attorney." The trial court noted the individual was incarcerated in Louisiana, which MacDonald confirmed. MacDonald then described the "Human Rights Tribunal International" for public court hearings, where people could present evidence and are not required to have an attorney or prosecutor controlling the evidence.

MacDonald declined to sign the waiver of counsel document and said he was not allowed to contract with the State Bar Association. The trial court explained that the individual MacDonald named as his representative would not be allowed to represent him, since he was not a licensed attorney. The trial court then moved the trial setting 30 days to allow for discovery exchange and for MacDonald to retain counsel or decide whether he wanted to represent himself and sign a waiver.

On October 7, 2021, at the pretrial hearing, the trial court noted the previous reset for MacDonald to determine whether he would retain counsel or represent

4

himself. The trial court explained if he was going to represent himself, she needed to go over the admonishment with him, to which MacDonald replied, "[Y]ou've already done that." The trial court then inquired if the admonishment had been signed, and MacDonald told her that he did not represent himself. The trial court then read the identical admonishment that she previously read and gave MacDonald a copy. MacDonald said he read and understood the document as well as the waiver of his right to an attorney, waiver of his right to a court-appointed attorney, and the significance of that. MacDonald again declined to sign the waiver and admonishment saying he was "not allowed to contract." MacDonald then notified the trial court he planned to call two witnesses and acknowledged the discovery materials the State provided. The trial court suggested a trial date in early November, and MacDonald agreed.

At docket call on October 28, 2021, MacDonald appeared without counsel and discussed his status as an "American National" and going through the "naturalization process[.]" When the State said they were conducting discovery under Texas Code of Criminal Procedure article 39.14, MacDonald responded, "That's a statute. It doesn't apply to me." The trial court asked if MacDonald was ready for the November trial setting, and he said he was, "but the paperwork is not ready." When the trial court asked again if he was ready, MacDonald responded, "It's a fictitious trial."

5

At the pretrial hearing on November 8, 2021, the following exchange occurred regarding previous admonishments to MacDonald:

[THE STATE]: There's a few things I would like to get on the record, and I would like the Court -- if the Court would entertain discussing Mr. MacDonald's right to an attorney again before we get into everything. Prior to the Court -- the Judge coming out, I did have a conversation with Mr. MacDonald about his right to an attorney, and I, essentially, told him our belief, as the Prosecution, is it's always in the person's best interest to have an attorney. Mr. MacDonald and I discussed -- he discussed a little bit about factual issues of the case, and I told Mr. MacDonald based on the rules of evidence and procedure, I will object if I think things are objectionable. I told him -- I tried to avoid giving advice, obviously, but I told him attorneys that are licensed in the state of Texas are trained in how to get evidence in, how to object to evidence and things like that.

Mr. MacDonald mentioned something to me about a limited power of attorney as part of a court appointed attorney. I told him I didn't know how to address that other than to say an attorney licensed in state of Texas in this case could be appointed to represent him in this case -- in this case alone, and it would be up to him to discuss with his appointed attorney the scope of their representation. That's kind of the extent of our conversation about it, and I wanted the Court to, maybe one more time, address with Mr. MacDonald whether he would like a court appointed attorney appointed to him or not.

. . . [T]he court admonished him with the standard admonishment, but I don't believe Mr. MacDonald signed off on that, and I don't recall if Mr. MacDonald gave a very clear waiver of his right to an attorney. So, based on that prior uncertainty of that and the conversations I had with Mr. MacDonald, I wanted the court to address it one more time with him to see what his decision was on that, Judge.

THE COURT: Mr. MacDonald, I see you have that document in your hand, the waiver of attorney.

. . .

6

[MACDONALD]: Y'all keep thinking, like, people waive their rights. I'm not waiving any of them. They are reserved and retainable, same thing with the highways. They are public. So, I'm saying it's an offer to contract, and you know, American Bar Association, like I keep b[r]inging up, it says I can bring evidence to the prosecution at any time. It doesn't have to be by an attorney or anybody. It can just be by any witness, just an investigator, anything, and it can be accepted and filed in, in a correction we made to the record in case they charge the wrong person with the crime – and you know, what I'm saying? The record gets corrected. That's it. It's just – I keep repeating myself. . . . Like, I'm (sic) feel like I'm wasting my breath."

MacDonald told the court he was charged with manufacture/delivery, but he had never seen the drugs. MacDonald explained, "I'm not going to hide behind an attorney that's going to try to force a plea bargain[.]" The following conversation ensued:

THE COURT: Is that what you are telling me, that you do not want a court appointed lawyer, and you are also not hiring a lawyer? Can we have a "yes" or "no" to those for the record?

THE DEFENDANT: I'm going to say no.

THE COURT: You are going to say "no"?

THE DEFENDANT: I'm not going to require an attorney for trial.

THE COURT: You don't --

THE DEFENDANT: I'm not supposed to be consenting to the trial anyway.

THE COURT: You don't want a court appointed lawyer?

THE DEFENDANT: That's right, but I'm not waiving the right.

THE COURT: But you are not waiving the right -- which right?

THE DEFENDANT: For an attorney at any time. I can request one. That's one of the rights.

7

THE COURT: Certainly. You are telling me you don't want a court appointed lawyer right now. That's what you are telling me, and I'm hearing that. You were admonished previously on the consequences of that, and at the same time, you are telling me you understand that you have the right to request a lawyer at any time; is that correct?

THE DEFENDANT: Yes, ma'am.

After the trial court granted the State's motion to proceed on the lesser-included charge of possession, the trial court advised MacDonald of the punishment range for the second-degree felony and re-arraigned him. MacDonald said that he understood the charge and punishment range, pled not guilty, and proceeded to trial pro se.

**Trial**

MacDonald participated in voir dire and described his political beliefs by presenting a video regarding "the difference between US Texas and United States," including that you did not have to be an attorney to practice law and that being an "American National" was different than being a "US citizen." He also responded to the State's voir dire by saying, "[H]e's talking about objecting and submitting evidence, and every time I submit something, he would object nonstop. . . . I have to argue and disagree with that because it's not a right to a fair trial, and there's no fairness at all about that period." Right after the jury was sworn, MacDonald asked the trial court whether all the jurors had five fingers. When the trial court answered affirmatively, MacDonald said, "All right. Okay. That's how they used to do it to see if you had five fingers. If you had six, you are the fallen angel."

8

Trooper Mackenzie Brown testified that on March 12, 2021, he stopped MacDonald for traffic violations. MacDonald had a passenger in the vehicle, Hannah Hill. His vehicle was loaded with Hill's belongings, as he was helping her move in a rush. When Trooper Brown asked MacDonald if there was anything illegal in the vehicle, he said, "Not that I am aware of." This response caught Trooper Brown's attention, and he asked to search the vehicle. MacDonald consented to the search. Trooper Brown located a lockbox with a "large, green meth pipe" under the driver's seat. Inside the box was a lip balm container filled with methamphetamine. Trooper Brown said the lockbox was found under the driver's seat, MacDonald was operating the vehicle, and it was closer to MacDonald than Hill. Trooper Brown testified the scale with methamphetamine residue was found in a box in the back of the vehicle.

Trooper Brown believed that MacDonald's nervousness and answers he gave suggested his knowledge of the drugs, specifically that they were in the vehicle and their location. He did not observe Hill lean over from her seat while he questioned MacDonald. Trooper Brown arrested MacDonald for possession of methamphetamine.

The substances located inside the vehicle were sent to the Texas Department of Public Safety (DPS) Crime Lab in Houston for testing. An analyst testified that tests confirmed the substance was methamphetamine, and it had an aggregate weight of 4.51 grams.

During trial, MacDonald's strategy included challenging the element of intent and his knowledge, saying he did not know there were drugs in the car and shifting the blame to Hill. He focused on Hill's prior convictions. MacDonald called a witness who had known him his whole life and testified they had never seen him use drugs. He also challenged Trooper Brown and the forensic analyst who tested the substances by asking if they fingerprinted the evidence or conducted DNA tests on it to determine whether he handled it. They testified they had not performed those tests.

One witness MacDonald called observed the inside of his vehicle just before he left to get Hill. The witness described the vehicle as clean, except for a few tools and a change of clothes, but acknowledged she did not look under the seat. MacDonald testified that when he picked up Hill, she was in a hurry, and they loaded so many boxes in his car, he was afraid they would not all fit. He also described her odd behavior and dilated pupils. MacDonald explained he noticed the lockbox when Trooper Brown pulled them over and approached the passenger door, but he did not look inside, because it was not his.

The trial court admonished MacDonald many times throughout the trial for various things, including proper objections, and proceeding in a question-and-answer format with witnesses. The jury convicted MacDonald of possession of methamphetamine as charged in the indictment. The parties agreed on punishment,

and the trial court sentenced MacDonald to ten years of confinement but suspended the sentence and placed him on probation for four years. He did not request an attorney during trial.

## ANALYSIS

### Issue One: Self-Representation Admonishment

In his first issue, MacDonald argues the trial court failed "to adequately address the waiver of counsel." In support of this issue, he contends "there is no indication that any in-depth inquiry was performed."

A criminal defendant has the right to assistance of counsel and right to waive counsel and represent himself. *See* U.S. CONST. amends. VI, XIV; Tex. Const. art. 1 § 10; Tex. Code Crim. Proc. Ann. art. 1.05. The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant's right to counsel. *See Thomas v. State*, 550 S.W.2d 64, 67 (Tex. Crim. App. 1977).

The Sixth Amendment also implies that a criminal defendant has the right to waive counsel and represent himself. *See Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *See id.* at 834–36; *see also Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997). "The decision to waive counsel and proceed pro se is made 'knowingly and intelligently' if it is made with a full understanding of the right to counsel, which is

11

being abandoned, as well as the dangers and disadvantages of self-representation." *Collier*, 959 S.W.2d at 626 (citing *Faretta*, 422 U.S. at 834–36); *see also Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). A written waiver under article 1.051(g) is not mandatory. *See Burgess v. State*, 816 S.W.2d 424, 430–31 (Tex. Crim. App. 1991). The record must show the trial court thoroughly admonished the defendant. *Faretta*, 422 U.S. at 834–36; *Collier*, 959 S.W.2d at 626 n.8.

"[T]he record must be sufficient for the reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation." *Goffney*, 843 S.W.2d at 585 (citation omitted). In other words, when a defendant desires to proceed pro se, our inquiry "must center *not* on a traditional waiver of counsel analysis, but on whether the defendant is aware of the dangers and disadvantages of self-representation." *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). In determining whether the defendant knowingly and intelligently waived counsel, we consider the totality of the circumstances, including the accused's background, experience, and conduct. *See Grant v. State*, 255 S.W.3d 642, 647–48 (Tex. App.—Beaumont 2007, no pet.). These considerations may include a defendant's education or sophistication, the simplicity of the charge, and the stage of the proceeding. *Id*. at 648. Other considerations include whether counsel represented the defendant before trial, whether standby

counsel was appointed, and whether a defendant had experience with the criminal justice system. *Id.*

"In analyzing a defendant's assertion of his right to self-representation, the focus is not solely on whether the right to counsel was waived but also on whether the defendant was aware of the dangers and disadvantages of self-representation." *Huggins v. State*, No. PD-0590-21, 2023 WL 5729843, at *2 (Tex. Crim. App. Sept. 6, 2023) (citing *Goffney*, 843 S.W.2d at 585). A trial judge should ensure that a defendant's choice to represent himself at trial is informed and made with eyes open. *Faretta*, 422 U.S. at 835.

The record reflects that the trial court moved the trial setting multiple times to allow MacDonald time to determine whether he wanted to proceed with a licensed attorney or proceed pro se, which reflected the importance of the decision. The record also established that the trial court provided a copy of its admonishment regarding the waiver of his right to counsel and read it aloud to him on the record at least twice. MacDonald told the trial court he understood the admonishment the trial court read and the significance of waiving that right. He refused to sign the waiver given his political belief that he "was not allowed to contract."

The record revealed that the State discussed with MacDonald the risks of proceeding without counsel, including evidentiary issues, and that it was "in a person's best interest to proceed with an attorney." The trial court also explained

that if an attorney was appointed for him, they were obligated to represent him through the proceeding. The record also showed that MacDonald recognized the charge against him. He said that he did not want "to hide behind an attorney that's going to try to force a plea bargain." Although MacDonald refused to sign the admonishment and said that he wanted to retain his right to request an attorney at any time, he told the trial judge that "I'm not going to require an attorney for trial," and noted the court could not require a "forced association" with an attorney. These discussions occurred before trial.

We consider the totality of the circumstances, which included discussions that it was better to proceed with counsel, that a licensed attorney would know how to enter and object to evidence, and that the State would make efforts to exclude objectionable evidence coupled with the trial court repeatedly reading an admonishment to MacDonald regarding his right to appointed counsel. *See Grant*, 255 S.W.3d at 647–48. Based on the record before us, we hold the admonishments were effective, as MacDonald was "aware of the dangers and disadvantages of self-representation[,]" and he made his choice with "'eyes open.'" *See Faretta*, 422 U.S. at 835 (citation omitted); *Huggins*, 2023 WL 5729843, at *2; *Goffney*, 843 S.W.2d at 585. We overrule issue one.

14

**Issue Two: Competency**

In his second issue, MacDonald complains that the trial court erred by not suggesting sua sponte that he may be incompetent to stand trial under Texas Code of Criminal Procedure article 46B.004. In support of this, MacDonald focuses on documents he filed and his "fallen angel" comment. He argues the "cumulative weight of all these examples and others should have put the trial court on notice that a competency evaluation was in order."

We review a trial court's failure to conduct an informal competency inquiry for an abuse of discretion. *See Lindsey v. State*, 544 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Lewis v. State*, 532 S.W.3d 423, 432 (Tex. App.—Houston 2016, pet. ref'd). Under this standard, we do not substitute our judgment for the trial court's, rather we determine whether the trial court's decision was arbitrary or unreasonable. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds, as stated in Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013); *Johnson v. State*, 429 S.W.3d 13, 16 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also George v. State*, No. 09-13-00172-CR, 2014 WL 4637992, at *2 (Tex. App.—Beaumont Sept. 17, 2014, no pet.) (mem. op., not designated for publication). "The trial court's firsthand assessment of a defendant's ability to assist counsel and his understanding of the

15

proceedings is entitled to 'great deference' by a reviewing court." *Lewis*, 532 S.W.3d at 432 (quoting *McDaniel v. State,* 98 S.W.3d 704, 713 (Tex. Crim. App. 2003)).

On its own motion, the trial court shall suggest the defendant may be incompetent to stand trial "[i]f evidence suggesting the defendant may be incompetent to stand trial" comes to the trial court's attention. Tex. Code Crim. Proc. Ann. art. 46B.004(b). A suggestion of incompetency is the threshold to trigger an informal inquiry into a defendant's competency. *See id.* art. 46B.004(c), (c-1). A person is incompetent to stand trial if he does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a).

Evidence suggesting the need for an informal inquiry may be based on observations relating to one or more factors described by Article 46B.024, including the defendant's ability to: rationally understand the charges against him during the criminal proceedings and the potential consequences of the pending criminal proceedings; disclose pertinent facts, events, and states of mind; engage in a reasoned choice of legal strategies and options; understand the adversarial nature of criminal proceedings; exhibit appropriate courtroom behavior; and testify. *See id.* arts. 46B.004(c-1), 46B.024(1)(A)–(F). Additional considerations for evidence suggesting incompetence include whether a defendant is a person with mental illness

16

or intellectual disability and its duration, degree of impairment caused by the mental illness or intellectual disability along with the specific effect on the defendant's capacity to engage with counsel in a reasonable and rational manner. *See id.* art. 46B.024(2)–(4). The final factors are whether the defendant is taking psychoactive or other medication, the necessity of medication to maintain competency, and the medication's effect on his appearance, demeanor, and ability to participate in the proceedings. *See id.* art. 46B.024(5). We presume a defendant is competent to stand trial. *See id.* art. 46B.003(b).

While the record reflects that MacDonald expressed beliefs that he was an "American National," a member of the "American National Union," claiming that the United States was not a country, that he was not subject to the laws, and made a statement about a "fallen angel" to the trial court, these do not constitute evidence of incompetence. *See Lindsey*, 544 S.W.3d at 24 (noting "isolated instances of confusion" did not show incompetence to stand trial). Rather, the record reflects that MacDonald held a distrust for the judicial system and did not want an appointed attorney to represent him, expressing a concern that an appointed attorney would try to "force a plea bargain[.]" The record shows he understood the initial charges of possession with intent to deliver/manufacture and that the State proceeded with the lesser-included possession charge.

17

Although MacDonald expressed his nervousness and struggled to introduce evidence under the rules, lack of legal skill does not show a defendant's incompetence to stand trial. *See id.* at 24, 26; *Lewis*, 532 S.W.3d at 433. MacDonald employed a trial strategy that he lacked the requisite intent or knowledge for possession by shifting the blame to Hill. He questioned witnesses about Hill's criminal history, called witnesses that spoke to his lack of drug use, and testified himself that he never used drugs. MacDonald also cross-examined the State's witnesses about their failure to fingerprint or DNA test the evidence, which they acknowledged could have shown who handled it.

Despite his lack of skill, the record does not suggest MacDonald was incompetent to stand trial. Instead, it established MacDonald was aware of the charges against him and the adversarial nature of the proceedings, engaged in a reasoned trial strategy, appropriately examined witnesses, and relayed facts of the events leading up to his arrest during his testimony. *See* Tex. Code Crim. Proc. Ann. arts. 46B.004(c-1), 46B.024(1)(A)–(F). Nor was there any suggestion he required medication or suffered from a mental illness or disability. *See id.* art. 46B.024(2)–(5). Although MacDonald's decision to proceed pro se may have been unwise, and he struggled at times to apply evidentiary rules, he "made conscious and rational choices about his legal strategy." *See Lindsey*, 544 S.W.3d at 26. MacDonald focused on specific elements of the offense the prosecution had to prove and attacked

certain elements. *See id.* He also gained admissions on cross-examination that supported his defensive theory. *See id.* His expressed nervousness likewise showed an appreciation of the adversarial nature of the proceedings. *See id.*

We hold the trial court did not abuse its discretion by failing to make a sua sponte suggestion of incompetence that would have resulted in an informal inquiry. *See* Tex. Code Crim. Proc. Ann. art. 46B.004(b), (c); *See Lindsey*, 544 S.W.3d at 21; *Lewis*, 532 S.W.3d at 432. We overrule issue two.

## CONCLUSION

Having overruled MacDonald's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on September 8, 2023
Opinion Delivered October 11, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

19